**Richmond**

CLARENCE DICKERSON

v.

CITY OF RICHMOND

No. 0051-84

Decided July 1, 1986

474

## Counsel

C. David Whaley (Morchower, Luxton & Whaley, on brief), for appellant.

James C. Roberts (Gary J. Spahn; Drew St. J. Carneal, Acting City Attorney; Michael L. Sarahan, Assistant City Attorney; Warren B. Von Schuch, Assistant Commonwealth Attorney; Mays, Valentine, Davenport & Moore, on brief), for appellee.

## Opinion

**BENTON, J.**—Clarence Dickerson was arrested on a warrant charging him with "loitering for the purpose of soliciting or engaging in prostitution or other lewd, lascivious or indecent act," a misdemeanor under the Richmond City Code.[1] He was tried by a

[1] Section 20-83 of the City Code provides:

(a) It shall be unlawful for any person, within the city limits, to loiter, lurk, remain, or wander about in a public place, or in any place within view of the public or open to the public, in a manner or under circumstances manifesting the purpose of engaging in prostitution, or of patronizing a prostitute, or of soliciting for or engaging in any other act which is lewd, lascivious or indecent. Among the circumstances which may be considered in determining whether any such purpose is manifested by a particular individual are the following: (i) that, to the knowledge of the arresting officer at the time of arrest, such individual has within one year prior to the date of arrest been convicted of any offense chargeable under this section, or under any other section of this Code or the Code of Virginia, relating to prostitution, pandering, or any act proscribed as lewd, lascivious or indecent; (ii) that such individual repeatedly beckons to, stops, attempts to stop, or interferes with the free passage of other persons, or repeatedly attempts to engage in conversation with passersby or individuals in stopped or passing vehicles; or (iii) that such individual repeatedly stops or attempts to stop motor vehicle operators by hailing, waving arms, or other bodily gestures. No arrest shall be made for a violation of this section unless the arresting officer first affords such person an opportunity to explain the conduct in question, and no one shall be convicted of violating this section if it appears at trial that the explanation given was true and disclosed a lawful purpose.

(b) For the purposes of this section, a "public place" means any street, sidewalk, bridge, alley or alleyway, plaza, park, driveway, parking lot or transportation facility, or the door-

jury, found guilty of "loitering for the purpose of prostitution," and sentenced to twelve months in jail. Dickerson contends on appeal that the ordinance violates several provisions of the state and federal constitutions. He also challenges the sufficiency of the evidence and contends that the court erred in denying his motion for a mistrial on the basis of comments in the Commonwealth's opening statement. We conclude that the evidence is insufficient to sustain the conviction, and reverse.

Detectives Steve Dalton and Richard Palmer, assigned to the Morals Squad of the Richmond Bureau of Police, Vice Division, were sitting in a parked car at Madison and Broad Streets on July 18, 1984, at 1:10 a.m., when they first observed Dickerson, dressed in blue jeans and a shirt tied above his navel, and carrying a tan purse. Dickerson occasionally stood with one foot on the curb and the other foot in the street and waved at passing vehicles with male occupants. Detectives Dalton and Palmer each testified to Dickerson's actions with respect to three vehicles; Dalton gave the license numbers for two of the three vehicles.

The detectives saw Dickerson wave at a vehicle on Broad Street. The vehicle circled the block and parked on the north side of Broad Street. Dickerson walked from the southeast corner of Broad and Madison Streets to the vehicle, entered it, and talked to the driver for approximately three minutes. Dickerson then left the vehicle and returned to the southeast corner of Broad and Madison Streets.

From this position Dickerson watched traffic on Broad Street and peered around the corner down Madison Street toward Grace Street. At 1:15 a.m., Dickerson approached a white Vega stopped in the 200 block of Madison Street. Leaning into the passenger side, Dickerson talked to the driver for approximately one minute. He then walked to the corner of Madison and Grace Streets, where he "just leaned on the light pole."

At 1:27 a.m., an unmarked police vehicle carrying uniformed officers drove up Madison Street. Detectives Dalton and Palmer saw Dickerson walk away and go behind a building on the north-

ways and entrance ways to any building which fronts on any of the aforesaid places, or a motor vehicle in or on any such place.

(c) Any person, upon conviction of an offense charged under this section, shall be guilty of a Class 1 misdemeanor.

west corner of Madison and Grace Streets. He remained there, "peering around," until the unmarked police vehicle passed.

At 1:30 a.m., Dickerson approached a Ford Fairmount which had stopped on Madison Street, and talked to the Ford's male driver from the driver's side for one or two minutes. Dickerson then returned to the corner of Madison and Grace Streets.

Detectives Dalton and Palmer asked a uniformed officer to detain Dickerson until they could leave their observation point. Detective Dalton approached Dickerson, identified himself, and asked how long Dickerson had been on the corner. Dickerson replied that he had been there a half hour. Detective Dalton asked what he had been doing on the corner. Dickerson said that he was just resting. Detective Dalton asked what he had been doing on the corner of Broad and Madison Streets. Dickerson said that he had been doing "nothing." He also told the detectives that he was not employed. The detectives then arrested Dickerson for "soliciting for the purpose of prostitution."

Because we conclude that the evidence in this case was insufficient to sustain the conviction, we decline to address Dickerson's challenges to the constitutionality of the ordinance.

> One of the most firmly established doctrines in the field of constitutional law is that a court will pass upon the constitutionality of a statute only when it is necessary to the determination of the merits of the case.

*Bissell* v. *Commonwealth*, 199 Va. 397, 400, 100 S.E.2d 1, 3 (1957) (citations omitted). *See also Jones and Hall* v. *Commonwealth*, 210 Va. 299, 303, 170 S.E.2d 779, 782 (1969); *Corbett* v. *Commonwealth*, 210 Va. 304, 307, 171 S.E.2d 251, 253 (1969).

The offense for which the defendant was convicted contains two elements:

> —to loiter, lurk, remain, or wander about in a public place, or in any place within view of the public or open to the public;

> —[for] the purpose of engaging in prostitution, or of patronizing a prostitute, or of soliciting for or engaging in any

other act which is lewd, lascivious or indecent.[2]

■ To obtain a conviction under the ordinance the City must prove beyond a reasonable doubt *both* the act and mental state. Sufficient proof of one element, but not the other, will result in reversal. *Papachristou* v. *City of Jacksonville*, 405 U.S. 156, 163 (1972); *McKeon* v. *Commonwealth*, 211 Va. 24, 26-27, 175 S.E.2d 282, 284 (1970).

Dickerson and the City concur that the mental state element of the ordinance requires proof of specific intent. We agree. *See Maye* v. *Commonwealth*, 213 Va. 48, 49, 189 S.E.2d 350, 351 (1972). We also note that this conclusion is consistent with several decisions which have discussed enactments similar to the Richmond ordinance. *See Short* v. *City of Birmingham*, 393 So.2d 518, 521 (Ala. Crim. App. 1981); *City of South Bend* v. *Bowman*, ___ Ind. App. ___, 434 N.E.2d 104, 106-07 (1982); *State* v. *Evans*, 73 N.C. App. 214, 326 S.E.2d 303, 307 (1985); *In the matter of D*, 27 Or. App. 861, 557 P.2d 687, 690 (1976), *appeal dismissed sub nom. D.* v. *Juvenile Department of Multnomah County*, 434 U.S. 914 (1977).

■ In most cases, of course, the City must satisfy its burden of proving specific intent by circumstantial evidence. *Whitley* v. *Commonwealth*, 223 Va. 66, 73, 286 S.E.2d 162, 166, *cert. denied*, 459 U.S. 882 (1982); *Banovitch* v. *Commonwealth*, 196 Va. 210, 216, 83 S.E.2d 369, 373 (1954). Under familiar principles, such proof is insufficient if it creates merely a suspicion of guilt; the City's evidence must be consistent with guilt and exclude every reasonable hypothesis that the accused is innocent of the charged offense. *Webb* v. *Commonwealth*, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963).

With these principles in mind, we turn to the circumstances of this case. Overruling a motion to set aside the verdict, the trial court summarized the City's evidence in this fashion:

> This happened with three cars, [waving] at other cars. It's late at night, quarter after one, quarter til two. . . . His only explanation was he was resting. He was standing. He did hide when the police came. My recollection is two uniformed

---

[2] *See supra* note 1.

officers came up in an unmarked car, and he went into the shadows and waited until they left, and then came back out. And, I think the strange thing about these cases is the appearance . . . of the defendant, leads to what common sense tells you, that people that are soliciting for the purpose of this would dress differently than normal people. . . . I believe there was a conclusion he was dressed like a female, although the officer said he had on a blouse tied in a knot and his [navel] was exposed, and he had a pocketbook, which I think would be a consideration that the jury could consider. . . . It is a far cry from people just standing on the corner being arrested. And, really, [at] that hour of the night has a whole lot to do with it. And, it might have been an entirely different situation maybe if this was three o'clock in the afternoon. It is not likely that you would have three friends that would come by at one fifteen in the morning, quarter til two.

■ The court's summary accurately represents the totality of the City's evidence. On appeal, we view the evidence in a light most favorable to the City, granting all reasonable inferences that can be drawn from the evidence. *Gooden* v. *Commonwealth*, 226 Va. 565, 571-72, 311 S.E.2d 780, 784 (1984); *Evans* v. *Commonwealth*, 215 Va. 609, 612, 212 S.E.2d 268, 271 (1975).

As the trial court's summary indicates, the jury was presented with proof of several circumstances which were consistent with a suspicion of guilt, including the time of the alleged offense, Dickerson's mode of attire, his ostensibly exclusive interest in vehicles with male occupants and the fact that he withdrew from his street-corner position when the unmarked police vehicle approached. In addition, the City proved that Dickerson more than once waved at motor vehicle operators, a circumstance which the ordinance expressly allows the trier of fact to consider with regard to specific intent.[3] The City also proved that Dickerson engaged in three brief conversations with the drivers of three vehicles. The City's evidence did not reveal the contents of these conversations,

---

[3] The act of waving at motor vehicle operators is one of three illustrative circumstances which may be considered in determining specific intent. *See* Richmond City Code § 20-83 (a)(i)-(iii). The jury was not limited to the three circumstances set out in the ordinance. We do not decide in this case whether proof of more than one of these circumstances is sufficient to convict under the ordinance.

although the detectives took note of the license numbers of the three vehicles and the City presumably could have adduced the testimony of the drivers. The City's evidence also did not reveal any suggestive gestures or expressions by Dickerson, apart from his acts of waving.

In *Pederson* v. *City of Richmond*, 219 Va. 1061, 254 S.E.2d 95 (1979), the Supreme Court considered the meaning of the terms "lewd, lascivious or indecent."

> These words have meanings that are generally understood. We have defined "lascivious" to mean "a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite." "Lewd" is a synonym of "lascivious" and "indecent." Webster's Third New International Dictionary 1301 (1969). As used in the ordinance, the terms refer to sexual conduct that is contrary to community standards of morality.

*Id.* at 1065, 254 S.E.2d at 98 (citations omitted).

We believe the meaning of prostitution is generally understood and therefore requires no separate examination. *See* Code § 18.2-346.

■ That Dickerson appeared to be dressed in female attire, as the detectives and the trial court concluded, and seemed to be drawn to only those vehicles with male occupants create a suspicion that his purpose in loitering was sexual in nature. Unlike the "direct statements, indirect suggestions, and salacious innuendoes" made by the defendant in *Pederson*, however, the City's evidence does not prove beyond a reasonable doubt that Dickerson's intent was prostitution or other conduct of a lewd, lascivious or indecent nature. *See Pederson* v. *Commonwealth*, 219 Va. at 1067-68, 254 S.E.2d at 99-100. The City was not required to prove prostitution or attempted prostitution because "solicitation may be completed before an attempt is made to commit the solicited crime." *Id.* at 1068, 254 S.E.2d at 100. The evidence, however, must prove that Dickerson's specific intent was to engage in prostitution or to solicit or engage in any other lewd, lascivious or indecent act. *McKeon*, 211 Va. at 26, 175 S.E.2d at 284; *see Hensley* v. *City of Norfolk*, 216 Va. 369, 375, 218 S.E.2d 735, 740-41 (1975).

We conclude that the evidence, when viewed in a light most favorable to the City, did not prove beyond a reasonable doubt that Dickerson's actions manifested the purpose of engaging in prostitution or soliciting or engaging in other lewd, lascivious or indecent acts. Because one of the two elements of the ordinance was not proved, the evidence was not sufficient and the conviction must be reversed. *McKeon*, 211 Va. at 27, 175 S.E.2d at 284.

Accordingly, we reverse the judgment and dismiss the warrant. In light of the result, we do not address Dickerson's contention regarding the Commonwealth's opening statement.

*Reversed and dismissed.*

Barrow, J. and Keenan, J. concurred.