## Richmond

CURTIS L. COLEMAN, a/k/a WAYNE ANTHONY HARRIS

v.

CITY OF RICHMOND

No. 0646-86

Decided January 19, 1988

460

COUNSEL

(Alexander Z. Matzanias, on brief), for appellant.

(James C. Wicker, Jr., Chief Deputy Commonwealth's Attorney for the City of Richmond, on brief), for appellee.

OPINION

**COLEMAN, J.** — A Richmond ordinance prohibits loitering in a public place "under circumstances manifesting the purpose of engaging in prostitution." Curtis Coleman appeals his conviction under that ordinance and argues that the statute is overbroad, un-

constitutionally vague, and violative of his fifth amendment rights. He also argues that even if the ordinance is constitutional, the evidence was insufficient to support the conviction.

Two detectives from the Vice Division of the Richmond Police Department testified that they were conducting a surveillance on November 9, 1985, at Madison and Broad Streets in Richmond. There they saw the appellant who was dressed in "female type clothing" and who wore a wig and makeup. Det. Van Buren testified that they observed the appellant approach six stopped cars, engage in short conversation with the occupants of each car and then walk away. He further testified that after a short conversation through the window with the driver of a seventh car, appellant got into that car and rode off with the driver. Neither Detective Van Buren nor his colleague heard any of the conversations.

The detectives followed the appellant and arrested both the appellant and the driver when the car stopped. The appellant told the officers and later testified that he had asked Mr. Eckton, the driver of the seventh car, for a ride home.

Mr. Eckton testified that the appellant asked him if he "wanted a date" and that the appellant "unbuckled my pants." On cross-examination, however, Mr. Eckton testified that appellant asked him for a ride, never discussed any sexual activity with him and never discussed anything about money with him.

A jury found the appellant guilty of loitering for the purpose of prostitution in violation of § 20-83 of Ordinances of the City of Richmond and recommended a sentence of twelve months in jail and a $500 fine.

Because we pass on the constitutionality of a statute only when it is necessary to the determination of the case, *Bissell v. Commonwealth*, 199 Va. 397, 400, 100 S.E.2d 1, 3 (1957) (citations omitted), we first address the sufficiency issue. Appellant argues that the city failed to prove the requisite specific intent and that it did not exclude every reasonable hypothesis of innocence. This court has previously addressed the question of sufficiency with respect to this ordinance. In *Dickerson v. City of Richmond*, 2 Va. App. 473, 346 S.E.2d 333 (1986), we held that the city failed to prove the defendant's specific intent. The *Dickerson* case presented a number of circumstances which were consistent with a

suspicion of guilt: the incident was late at night, Dickerson's dress was suggested to be "female," he waved at passing cars, he engaged in conversation with three male drivers, and he withdrew from the street corner when an unmarked police car approached. *Id.* at 475-76, 346 S.E.2d at 334-35. The suspicious conduct, however, without more did not prove beyond a reasonable doubt that Dickerson's intent was to engage in prostitution or other unlawful behavior. In the present case, the city presented evidence that appellant asked Mr. Eckton if he "wanted a date," that a "date" in street terms meant "to have sex," and that appellant "unbuckled" Mr. Eckton's pants. This evidence plainly supports a finding of specific intent to engage in prostitution or to solicit for unlawful acts.[1] Therefore, we find that the evidence is sufficient to support a conviction under the ordinance. *Cf. Pederson v. City of Richmond*, 219 Va. 1061, 1067-68, 254 S.E.2d 95, 99-100 (1979).

██ Having found sufficient evidence to support a conviction, we must now consider whether that conviction rests upon an unconstitutional ordinance. In assessing the constitutionality of a statute or ordinance, courts must presume that the legislative action is valid. Consequently, the burden is on the challenger to demonstrate the constitutional defect. *See Working Waterman's Association of Virginia, Inc. v. Seafood Harvesters, Inc.*, 227 Va. 101, 110, 314 S.E.2d 159, 164 (1984). Further, as a state court, we may construe our statutes to have a limited application if such a construction will tailor the statute to a constitutional fit. *Gooding v. Wilson*, 405 U.S. 518, 520 (1972). If the statute or ordinance violates the federal or the Virginia constitution, however, and judicial severance of the invalid sections is impossible, it will fail and any conviction based thereon must also fail. *See Chesapeake & Ohio Canal Co. v. Great Falls Power Co.*, 143 Va. 697, 705, 129 S.E. 731, 734 (1925).

Appellant argues that the Richmond ordinance implicates rights protected under the first and fifth amendments, made applicable to the states by the fourteenth amendment, and on separate

---

[1] Although the ordinance apparently prohibits loitering in a manner manifesting the purpose of prostitution or "soliciting for or engaging in any other act which is lewd, lascivious, or indecent," we narrowly construe that language to apply to solicitation for illegal acts. Solicitation of a non-criminal act is not a criminal offense, and loitering to solicit for non-criminal act cannot be illegal either. *See Pederson v. City of Richmond*, 219 Va. 1061, 1065, 254 S.E.2d 95, 98 (1979).

fourteenth amendment grounds. Specifically, he argues that because the ordinance is overbroad, it impinges on first amendment guarantees of free speech and the implied guarantee of free association. He asserts that the provision requiring an officer to ask for an explanation violates his right to remain silent under the fifth amendment. Finally, he argues that the ordinance is unconstitutionally vague and thus violates the fourteenth amendment's due process protections.

Before considering these arguments, we note that generally, a litigant may challenge the constitutionality of a law only as it applies to him or her. *Grosso v. Commonwealth*, 177 Va. 830, 839, 13 S.E.2d 285, 288 (1941). That the statute may apply unconstitutionally to another is irrelevant; one cannot raise third party rights. An exception to this rule is in the area of first amendment challenges. *Broadrick v. Oklahoma*, 413 U.S. 601, 611-12 (1973). The *Broadrick* court held that the danger of chilling protected speech and conduct outweighs the danger of wrongful unprotected speech going unpunished and, therefore, litigants may challenge a statute on first amendment grounds even when their own speech is unprotected. *Id.* at 612; *accord Stanley v. City of Norfolk*, 218 Va. 504, 508-09, 237 S.E.2d 799, 801 (1977). The United States Supreme Court has recently allowed a facial attack on the ground of vagueness, as well, when the statute at issue touched first amendment concerns. *Kolender v. Lawson*, 461 U.S. 352 (1983). We hold that appellant in the present case has standing to raise the question of first amendment protections and of vagueness although his own first amendment rights were not compromised since solicitation for prostitution is not protected speech or conduct.

The ordinance at issue provides:

(a) It shall be unlawful for any person, within the city limits, to loiter, lurk, remain, or wander about in a public place, or in any place within view of the public or open to the public, in a manner or under circumstances manifesting the purpose of engaging in prostitution, or of patronizing a prostitute, or of soliciting for or engaging in any other act which is lewd, lascivious or indecent. Among the circumstances which may be considered in determining whether any such purpose is manifested by a particular individual are the following:

(i) that, to the knowledge of the arresting officer at the time of arrest, such individual has within one year prior to the date of arrest been convicted of any offense chargeable under this section, or under any other section of this Code or the Code of Virginia, relating to prostitution, pandering, or any act proscribed as lewd, lascivious or indecent;

(ii) that such individual repeatedly beckons to, stops, attempts to stop, or interferes with the free passage of other persons, or repeatedly attempts to engage in conversation with passersby or individuals in stopped or passing vehicles; or

(iii) that such individual repeatedly stops or attempts to stop motor vehicle operators by hailing, waving arms, or other bodily gestures. No arrest shall be made for a violation of this section unless the arresting officer first affords such person an opportunity to explain the conduct in question, and no one shall be convicted of violating this section if it appears at trial that the explanation given was true and disclosed a lawful purpose.

(b) For the purposes of this section, a "public place" means any street, sidewalk, bridge, alley or alleyway, plaza, park, driveway, parking lot or transportation facility, or the doorways and entrance ways to any building which fronts on any of the aforesaid places, or a motor vehicle in or on any such place.

(c) Any person, upon conviction of an offense charged under this section, shall be guilty of a Class 1 misdemeanor.

Richmond City Code § 20-83.

Loitering, wandering, idling, and lurking are not, by themselves unlawful, despite attempts of many municipalities to make them so. To the contrary, Justice Douglas has proclaimed them to be amenities which "have dignified the right of dissent" and "encouraged lives of high spirits rather than hushed, suffocating silence." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 164 (1972). To reach those lurkers who might pose a threat, the Richmond ordinance prohibits loitering with the intent to engage in prostitution or to solicit for purposes of indecent acts. The intent is an essential element of the offense. *Dickerson*, 2 Va. App. at

477, 346 S.E.2d at 335.

Besides prohibiting loitering with such an intent, the ordinance provides that among the circumstances which may be considered in determining whether the person loitering manifests that intent are three specific circumstances. The role of these enumerated circumstances is central to our decision. The language "among the circumstances which may be considered" indicates that the enumerated circumstances are not exclusive. A finding of one or more of the specified circumstances is not essential to find the required intent. It is not clear, however, whether the inclusion of the three particular circumstances was intended to prove that the presence of one or more of those circumstances would sufficiently manifest the intent, or whether the particular circumstances are of no significance except as investigative "hints" for police officers. We will analyze the statute under both constructions.

■ If the enumerated circumstances are sufficient, in themselves, to manifest the intent to engage in prostitution then the ordinance is overbroad and must fail. An ordinance is overbroad if it deters constitutionally protected conduct as well as unprotected conduct. *See Hill v. City of Houston*, 107 S. Ct. 2502 (1987). Overbreadth attacks are successful when the challenged statute is not drawn narrowly enough so that the statute's sweep encompasses protected speech or associations. *Broadrick*, 413 U.S. at 611-12. The Supreme Court has cautioned that application of the overbreadth doctrine is "strong medicine" and that a statute should not be void unless it is "substantially overbroad in relation to the statute's plainly legitimate sweep." *Id.* at 615.

Under the provisions of the Richmond ordinance, a person once convicted of prostitution could be arrested and convicted for window-shopping. A hitchhiker could be arrested and convicted because she waved and beckoned to cars though she said not a word regarding solicitation or prostitution. The ordinance may force people to curb their freedom of expression and association or risk arrest. *See Johnson v. Carson*, 569 F. Supp. 974, 978 (M.D. Fla. 1983) (appendix). Even if the hitchhiker or former prostitute were acquitted due to lack of evidence of intent, an arrest would be justified under the statute, and the arrest itself chills first amendment rights.

It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of government.

*United States v. Reese*, 92 U.S. 214, 221 (1875).

If the particular circumstances were included in the ordinance only as suggestions for what kinds of conduct might manifest an intent to engage in prostitution, but are not by themselves sufficient to prove intent, then the circumstances are not relevant to the constitutional inquiry as they have no force of law. The ordinance, then, stripped of the enumerated circumstances, prohibits loitering in a manner or under circumstances manifesting an intent to engage in prostitution. Under this construction, the ordinance must also fail though the defect now is vagueness.

A statute which does not clearly delineate what is prohibited conduct may be void for vagueness. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972). This doctrine protects two due process interests. First, it requires "that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.* at 108. Second, it prevents arbitrary and discriminatory enforcement by requiring that "laws . . . provide explicit standards for those who apply them." *Id.*; *see also Kolender*, 461 U.S. at 358. The Supreme Court has further noted that "where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' " *Grayned*, 408 U.S. at 109 (citations omitted).

Though the language of this ordinance is clear, the public is not adequately apprised of the behavior that is proscribed. Indeed, the statute essentially proscribes loitering with an unlawful intent; since loitering is not unlawful, the statute proscribes no illegal conduct. If no particular act is proscribed, those wishing to conform to the ordinance do not know what conduct to avoid. Further, the ordinance vests too much discretion in the officers who enforce the ordinance and the ordinance allows for arbitrary and discriminatory enforcement. Because no overt act of solicitation or prostitution is required, an officer may arrest someone on mere

suspicion of future criminality. Because there are no standards to govern the application of the ordinance, people are permitted to wander or stand idly at the whim of whichever police officer is on the beat. *See Brown v. Municipality of Anchorage*, 584 P.2d 35 (Alaska 1978). *But see People v. Smith*, 44 N.Y.2d 613, 378 N.E.2d 1032 (1978); *City of Milwaukee v. Wilson*, 96 Wis. 2d 11, 291 N.W.2d 452 (1980). It may be argued that the provision in the ordinance requiring an officer to allow a suspect the opportunity to explain the conduct in question, limits the officer's discretion. However, the officer is not required to accept any particular type of explanation or to give one any weight. Only the opportunity to explain is required; once it is afforded, the person may be arrested regardless of the content of the explanation. *See Johnson*, 569 F. Supp. at 978.

The obvious purpose of the Richmond ordinance is to protect innocent citizens from harassment and solicitation as they walk the sidewalks of their city. This is surely a legitimate governmental goal. Nevertheless, even for proper purposes, where first amendment protections are at risk, the state must use the least intrusive means to achieve its object. There are already in place statutes and ordinances prohibiting solicitation for prostitution as well as harassment, disorderly conduct, and breaching the peace. In this case, and in virtually every case where the city could establish the intent element of the ordinance in question, it is likely the city could establish the elements of solicitation. To establish intent under the ordinance, there must be an overt act which demonstrates the intent; that act will generally be sufficient to show solicitation. Thus, less restrictive means for addressing the problem already exist. Municipalities may not use ordinances to nip future crime in the bud, nor may they make conduct criminal which is less than an attempted crime. *See Papachristou*, 405 U.S. at 170 (when there is not enough evidence to charge a prisoner with an attempt to commit a crime, the prosecution may not obtain a conviction under the Vagrancy Act).

Because we find that the ordinance is unconstitutional on first amendment and due process grounds, we do not address appellant's fifth amendment argument. The conviction is reversed.

*Reversed.*

Hodges, J., and Keenan, J., concurred.