COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Willis and Elder
Argued at Salem, Virginia


ELVIS GENE DePRIEST

v.    Record No. 1587-99-3

COMMONWEALTH OF VIRGINIA

LARRY RIERSON JONES

v.    Record No. 1595-99-3

COMMONWEALTH OF VIRGINIA

RUSSELL NEWAII POINDEXTER

v.    Record No. 1596-99-3              OPINION BY
                                   JUDGE JERE M. H. WILLIS, JR.
COMMONWEALTH OF VIRGINIA              NOVEMBER 21, 2000

JAMES PATRICK FAY

v.    Record No. 1597-99-3

COMMONWEALTH OF VIRGINIA

PHILLIP WAYNE EVANS

v.    Record No. 1598-99-3

COMMONWEALTH OF VIRGINIA

BARRY WAYNE HODGES

v.    Record No. 1599-99-3

COMMONWEALTH OF VIRGINIA

JOHN JOHNSON, S/K/A
 JOHN WILLIAM JOHNSON

v.    Record No. 1600-99-3

COMMONWEALTH OF VIRGINIA

LAWRENCE T. MARTYS, S/K/A
  LAWRENCE P. MARTYS

v.    Record No. 1601-99-3

COMMONWEALTH OF VIRGINIA

EVERETTE ELMO DAVIDSON

v.    Record No. 1619-99-3

COMMONWEALTH OF VIRGINIA

RONALD WALLER, S/K/A
  RONALD THOMAS WALLER

v.    Record No. 1920-99-3

COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                  Jonathan M. Apgar, Judge, in DePriest
            Robert P. Doherty, Jr., Judge, in remaining cases

            Sam Garrison (David Denton Lawrence;
            Michael B. Massey; Trumbo & Massey, P.L.C.,
            Richard Lee Lawrence & Associates, on
            briefs), for appellants.

            John H. McLees, Jr., Senior Assistant
            Attorney General (Mark L. Earley, Attorney
            General, on brief), for appellee.

            Amicus Curiae:  Log Cabin Republican Club of
            Northern Virginia (William G. Kocol;
            Eugene M. Lawson, Jr., Resident Counsel, on
            brief), for appellants.

            Amicus Curiae:  The Liberty Project
            (Julie M. Carpenter; Jared O. Freedman;
            Elena N. Broder-Feldman; Jenner & Block, on
            brief), for appellants.

            Amicus Curiae:  American Civil Liberties
            Union Foundation, American Civil Liberties
            Union of Virginia, Inc., and Lambda Legal
            Defense and Education Fund, Inc. (Michael

                                -

Adams; Matthew Coles; Marianne Merritt;
Philip Hirschkop; Rebecca K. Glenberg;
Stephen R. Scarborough; Hirschkop &
Associates, P.C., on brief), for appellants.

These ten consolidated appeals are from judgments of conviction in the Circuit Court of the City of Roanoke for solicitation to commit oral sodomy in violation of Code §§ 18.2-29 and 18.2-361.[1] The appellants contend that the trial court erred in ruling that Code § 18.2-361: (1) does not violate the fundamental right to privacy guaranteed by Article I of the Constitution of Virginia; (2) does not violate the prohibitions against cruel and unusual punishment contained in Article I, Section 9, of the Constitution of Virginia and in the Eighth Amendment to the Constitution of the United States; and (3) does not violate the prohibitions against an establishment of religion contained in Article I, Section 16, of the Constitution of Virginia and in the First Amendment to the Constitution of the United States. The Commonwealth contends that the appellants lack standing to attack the constitutionality of Code § 18.2-361 facially and that each may assert the statute's constitutional invalidity only as the

---

[1] Code § 18.2-29 provides, "[a]ny person who commands, entreats, or otherwise attempts to persuade another person to commit a felony, shall be guilty of a Class 6 felony."
Code § 18.2-361, in relevant part, makes it a Class 6 felony "[i]f any person . . . carnally knows any male or female person by the anus or by or with the mouth, or voluntarily submits to such carnal knowledge."

-

statute applies to him in his respective case.  We affirm the judgments of the trial court.

## I.  BACKGROUND

Each appellant moved to dismiss the indictment against him, contending that Code § 18.2-361 is unconstitutional on its face. Each argued, inter alia, that the statute denies the fundamental right to privacy guaranteed by the Constitution of Virginia, that it violates the prohibition against an establishment of religion contained in the First Amendment to the Constitution of the United States and in Article I, Section 16, of the Constitution of Virginia, and that it violates the prohibition against cruel and unusual punishment contained in Article I, Section 9, of the Constitution of Virginia and the Eighth Amendment to the Constitution of the United States.  After conducting a joint evidentiary hearing and receiving post-hearing briefs, the trial court denied the motions.  This appeal addresses the trial court's ruling.

At the hearing on their respective motions to dismiss, appellants called as a witness Roanoke City Police Lieutenant R.E. Carlisle, commander of the police Vice Bureau.  Lieutenant Carlisle testified that the police had received numerous complaints of sexual activities in public places, including complaints that members of the public found used condoms littering the ground in city public parks.  He testified that

-

children had found condoms, in some cases thinking they were balloons.

Responding to the foregoing complaints, Lieutenant Carlisle sent plainclothes police officers to surveil the public parks. They observed homosexual "cruising" occurring in and between Smith Park and Wasena Park and in the public restroom in Wasena Park. Based on this information, Lieutenant Carlisle sent several male undercover officers into the parks to investigate solicitation to commit sodomy. He instructed the officers: (1) they were not to entrap anyone; (2) they were to investigate "based on their training and see if anyone would offer to commit an act against them, or pay to commit an act against them"; and (3) to be charged, a person "had to show a willingness to carry out the act in the park." The charges that led to these appeals were made pursuant to those guidelines. One person proposed committing oral sodomy in a private place. That person was not charged.

The appellants also called as witnesses a number of sex therapists, clergymen and lay people, who testified to the prevalence, popularity and harmlessness of oral sex between consenting adults, married and unmarried, "gay" and "straight," in their own lives and in modern American culture.

The trial court issued a memorandum opinion explaining its denial of the motions to dismiss. The court first held that Code § 18.2-361 did not constitute an establishment of religion

-

or impose cruel and unusual punishment.  It further held that, as applied to the appellants in these cases, Code § 18.2-361 violated no right to privacy recognized by the United States or Virginia Constitutions.  It ruled that the appellants lacked standing to complain of the potential application of the statute to other persons or to their private activities.

After the motions to dismiss were denied, nine of the appellants pled guilty and were tried jointly.  The evidence in each case, as summarized by the assistant Commonwealth's attorney, disclosed that the respective appellant and an undercover police officer met in a public park and struck up a conversation that led to the appellant's proposing to engage in oral sodomy with the officer.  In no case did the appellant specify that the act would occur other than in the public park. In four cases, the appellants reached for and fondled the officers' crotch areas while engaging in those discussions.  In another case, the appellant exposed himself to the officer while masturbating in a public restroom.  In one case, the appellant suggested "find[ing] a place where no one would see us" before performing fellatio on the officer.

In appellant Waller's jury trial, the arresting officer testified that he struck up a casual conversation with Waller while both were standing by the river in Wasena Park.  Waller then "grabbed" the officer's genitals and fondled him while

-

discussing sex acts and proposing that they commit oral sodomy
at a different spot in the park.

The appellants contend that they have standing to challenge
the constitutionality of Code § 18.2-361 on its face rather than
only as applied to them. They further contend that Code
§ 18.2-361 imposes cruel and unusual punishment and constitutes
an establishment of religion. Because the appellants lack
standing to attack Code § 18.2-361 on its face and because the
statute neither imposes cruel and unusual punishment nor
constitutes an establishment of religion, we affirm the
judgments of the trial court.

## II. <u>STANDING</u>

Appellants first contend that Code § 18.2-361 violates the
right to privacy as guaranteed by Article I, Section 1, of the
Constitution of Virginia, which provides:

> Equality and rights of men -- That all men
> are by nature equally free and independent
> and have certain inherent rights, of which,
> when they enter into a state of society,
> they cannot, by any compact, deprive or
> divest their posterity; namely, the
> enjoyment of life and liberty, with the
> means of acquiring and possessing property,
> and pursuing and obtaining happiness and
> safety.

In <u>Young v. Commonwealth</u>, 101 Va. 853, 45 S.E. 327 (1903),
the Supreme Court explained the meaning of the liberty guarantee
as follows:

> The word "liberty," as used in the
> Constitution of the United States and the

-

several States, has frequently been construed, and means more than mere freedom from restraint. It means not merely the right to go where one chooses, but to do such acts as he may judge best for his interest, <u>not inconsistent with the equal rights of others</u>; that is, to follow such pursuits as may be best adapted to his faculties, and which will give him the highest enjoyment. The liberty mentioned is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; <u>to be free to use them in all lawful ways</u>; to live and work where he will; to earn his livelihood by any lawful calling, and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purpose above mentioned. These are individual rights, formulated as such under the phrase "pursuit of happiness" in the Declaration of Independence, which begins with the fundamental proposition that all men are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty and the pursuit of happiness.

<u>Id.</u> at 862-63, 45 S.E. at 328-29 (citations omitted) (emphasis added). The constitutional right to liberty is not an unlimited license. Liberty must be enjoyed and exercised lawfully and in a manner not inconsistent with the equal rights of others.

An individual may challenge the constitutionality of a law only as it applies to him or her. <u>See</u> <u>Coleman v. City of Richmond</u>, 5 Va. App. 459, 463, 364 S.E.2d 239, 241-42 (citation omitted), <u>reh'g</u> <u>denied</u>, 6 Va. App. 296, 368 S.E.2d 298 (1988). "That the statute may apply unconstitutionally to another is irrelevant; one cannot raise third party rights." <u>Id.</u> at 463,

-

364 S.E.2d at 242.  See also Pederson v. Richmond, 219 Va. 1061, 1066, 254 S.E.2d 95, 98 (1979) (finding one lacks standing to assert the privacy rights of third parties).

The appellants contend that they fall within an exception to the general standing rule.

> In the past, the [United States Supreme Court] has recognized some limited exceptions to these principles, but only because of the most "weighty, countervailing policies."  One such exception is where individuals not parties to a particular suit stand to lose by its outcome and yet have no effective avenue of preserving their rights themselves.  Another exception has been carved out in the area of the First Amendment.

Broadrick v. Oklahoma, 413 U.S. 601, 611 (1973) (citations omitted); see also Santillo v. Commonwealth, 30 Va. App. 470, 477 n.3, 517 S.E.2d 733, 736 n.3 (1999) (stating an exception to the general standing rule is in the area of First Amendment challenges).

This is not a First Amendment case.  See Pederson, 219 Va. at 1066, 254 S.E.2d at 98.  Contrary to the appellants' argument, sex therapists, married persons, and consenting adults engaging privately in sexual conduct (persons not involved in this case) do not stand to lose by the outcome of this case. They retain an "effective avenue of preserving their rights themselves."  Any such person proposing or engaging in sodomy under circumstances supporting a claim of privacy may, upon

-

discovery and accusation, assert, in his defense, those circumstances and that claim.

We conclude, therefore, that appellants fall within the general rule that a party attacking the constitutionality of a statute must demonstrate that his own, rather than a third party's, rights are unconstitutionally infringed. Accordingly, appellants lack standing to challenge facially the constitutionality of Code § 18.2-361. Thus, we consider the constitutionality of the statute only as it applies to the appellants in this case and to their conduct that underlay their convictions.

### III.  PRIVACY

Appellants contend that by inhibiting their ability to engage in homosexual conduct with other similarly disposed persons, Code § 18.2-361 infringes their right to privacy. In so arguing, they assert the privacy rights of married persons and of persons who, unlike them, may engage in such conduct in private. But the appellants' conduct was not private. Whatever may be the constitutional privacy rights of one who engages in sodomy in private, those rights do not attach to one who does the same thing in public. See Lovisi v. Slayton, 363 F. Supp. 620 (E.D. Va. 1973), aff'd, 539 F.2d 349 (4th Cir.), cert. denied, 429 U.S. 977 (1976).

Lovisi involved a challenge to the constitutionality of the predecessor to Code § 18.2-361. Mr. and Mrs. Lovisi engaged in

-

sodomy with a third person in their home. They permitted themselves to be photographed committing those acts. The pictures fell into the hands of their children and became public. Lovisi claimed the statute unconstitutionally invaded his right of privacy. The court held that through publication Lovisi's acts ceased to be "private." The court said:

> The Court is faced with the . . . question of whether, if the Lovisis' conduct was not constitutionally protected, they may attack the constitutionality of [the statute] on the basis of the rights of third persons. . . . The Court . . . holds that they do not have standing to assert the constitutional rights of other persons and thus may not attack the constitutionality of statutes underlying their conviction on this basis.

Id. at 623-24.

The activities underlying the charges against the appellants were not conducted in private. Their solicitations were made to strangers in public parks. They proposed to commit sodomy in the public parks. The appellants' acts and their proposed conduct were clothed with no circumstance giving rise to a supportable claim of privacy. Those acts and proposed conduct fall squarely within the rule of Lovisi.

## IV. CRUEL AND UNUSUAL PUNISHMENT

The appellants next contend that Code § 18.2-361 violates the prohibitions against "cruel and unusual punishment" contained in Article I, Section 9, of the Constitution of

-

Virginia[2] and the Eighth Amendment to the Constitution of the United States.[3]  They argue that the disparity between the punishment provided for sodomy and that provided for adultery or fornication effects the imposition of cruel and unusual punishment upon those convicted of sodomy.  We disagree.

It lies within the province of the legislature to define and classify crimes and to determine the punishments for those crimes.  Hart v. Commonwealth, 131 Va. 726, 109 S.E. 582 (1921).  No punishment authorized by statute, even though severe, is cruel and unusual unless it is one "prescribing a punishment in quantum so severe for a comparatively trivial offense that it would be so out of proportion to the crime as to shock the conscience . . . ."  Id. at 745, 109 S.E. at 588.  We find our consciences shocked neither by appellants' sentences[4] nor by the five-year maximum sentence provided by the statute.  Therefore, we find no imposition of cruel or unusual punishment.

---

[2]"[E]xcessive bail ought not to be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted . . . ."  Va. Const. art. I, § 9.

[3]"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

[4]In nine of the ten cases, the defendants entered conditional pleas of guilty with plea agreements that the appropriate sentences would be twelve months in jail suspended and a $1,000 fine.  In the tenth case, the defendant was tried and convicted by a jury, and sentenced to serve sixty days in jail and a fine of $1,500.

-

V.   <u>ESTABLISHMENT OF RELIGION</u>

Finally, the appellants contend that Code § 18.2-361 violates the prohibition against an "Establishment of Religion" contained in Article I, Section 16, of the Constitution of Virginia[5] and the First Amendment to the Constitution of the United States.[6]  We disagree.

The appellants produced testimony concerning the religious origins and development of the law against sodomy.  They argue that its religious origin renders Code § 18.2-361 unconstitutional.

Although Code § 18.2-361 may have a basis in religious values, this alone is not dispositive of the constitutional issue.  In rejecting a constitutional challenge to Maryland's Sunday closing laws, the Supreme Court held in <u>McGowan v. Maryland</u>, 366 U.S. 420 (1961):

> However, it is equally true that the
> "Establishment" Clause does not ban federal
> or state regulation of conduct whose reason
> or effect merely happens to coincide or
> harmonize with the tenets of some or all
> religions.  In many instances, the Congress
> or state legislatures conclude that the
> general welfare of society, wholly apart
> from any religious considerations, demands
> such regulation.  Thus, for temporal
> purposes, murder is illegal.  And the fact

---

[5]"[T]he General Assembly shall not . . . confer any peculiar privileges or advantages on any sect or denomination . . . ." Va. Const. art. I, § 16.

[6]"Congress shall make no law respecting an establishment of religion . . . ."  U.S. Const. amend. I.

-

that this agrees with the dictates of the Judaeo-Christian religions while it may disagree with others does not invalidate the regulation. So too with the questions of adultery and polygamy. The same could be said of theft, fraud, etc., because those offenses were also proscribed in the Decalogue.

Id. at 442 (citations omitted).

The Supreme Court has defined a three-pronged test to determine whether a statute effects an establishment of religion. To be found free of such an establishment, "first, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.'" Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971) (citations omitted).

The appellants have failed to prove that the primary effect of Code § 18.2-361 is to advance or inhibit religion. Nor have they proved that Code § 18.2-361 fosters "excessive governmental entanglement with religion." Id. To the contrary, the statute rests plainly on long established secular values concerning sexual conduct.

Thus, the appellants have failed to demonstrate that Code § 18.2-361 effects an establishment of religion.

We affirm the judgments of the trial court.

Affirmed.

-