UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Causey and Senior Judge Haley
Argued at Richmond, Virginia


FRANCISCO BELTRAN PEREZ

MEMORANDUM OPINION* BY
v.        Record No. 0835-21-2                    JUDGE JAMES W. HALEY, JR.
JULY 19, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Todd M. Ritter (Hill & Rainey, on brief), for appellant.

Mason D. Williams, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The trial court convicted appellant of aggravated involuntary manslaughter and sentenced

him to twenty years of incarceration.[1]  On appeal, appellant challenges the sufficiency of the

evidence to sustain his conviction.  He also argues that the trial court abused its discretion by

sentencing him to "more than double the high-end recommendation of the sentencing guidelines."

For the following reasons, we affirm the trial court's judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  *Poole v.*

*Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469,

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The trial court also convicted appellant of underage possession of alcohol, driving under
the influence, and driving without an operator's license; appellant does not challenge those
convictions on appeal.

472 (2018)). In doing so, we discard any of appellant's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

On the evening of August 15, 2020, appellant was at a nightclub in Chesterfield County, where he consumed seven beers. He left in his car around 2:00 a.m. the next morning. As appellant approached an intersection, the light changed from green to yellow, and he accelerated to "get through the light." When appellant entered the intersection, he realized that a white Toyota Scion "was coming from the opposite direction" and turning through the intersection. Appellant "realized it was too late to stop" as his car collided with the Scion.

Omni Rodriguez saw the collision as he waited at the stoplight. Rodriguez testified[2] that appellant's car "did not respect the light" and entered the intersection at a "very high" speed. Rodriguez did not know how fast appellant was travelling but testified that it was "not a correct speed" for the street. The force of the collision launched the Scion off the road and up an embankment, where it struck a light pole before coming to rest on bushes that separated a parking lot from the road. Rodriguez exited his car to check on the Scion's driver, later identified as Justus Taylor, but he did not respond to Rodriguez. An autopsy revealed that Taylor died from blunt force trauma to his head during the accident; he was twenty years old.

Officer Stevens arrived at the intersection at 2:14 a.m. and saw two severely damaged vehicles. The Scion was off the road and had "heavy damage" to the driver's side and "front end." The front left tire and wheel assembly had been "ripped off." Appellant's car was "partially on the road[]" and had severe damage to the front end and "both driver and passenger side quarter panels." Vehicle debris was "in the middle of the intersection" and "several gouge marks" led from the

---

[2] Rodriguez testified through an interpreter.

intersection to the where the cars had come to rest. There were no signs that appellant took any maneuvers to avoid the collision.

An ambulance transported appellant to the hospital, where he consented to a blood draw at 3:47 a.m. Forensic analysis of his blood revealed a blood alcohol concentration of 0.145. When officers informed appellant that Taylor had died, he cried for "several minutes" and stated that he was "afraid of being deported."

Cailin Delaney, a forensic scientist at the Virginia Department of Forensic Science, testified that alcohol is a "central nervous system . . . depressant" that affects "vision" and "motor coordination" and can "increase reaction times." She explained that someone with a 0.145 blood alcohol concentration would have an impaired ability to respond to unexpected events and divide their attention between multiple tasks.

At the close of the Commonwealth's evidence, appellant did not move to strike and presented no evidence. The Commonwealth waived its initial closing argument, choosing to respond. Appellant then "submit[ted]" the case to the court without closing argument. After further inquiry from the court, appellant confirmed that he did not intend to present closing argument. The court found appellant guilty of aggravated involuntary manslaughter and continued the case for sentencing.

At the sentencing hearing, the trial court received a written victim impact statement from Taylor's mother. She expressed her joy and sense of "purpose" in being Taylor's mother; she felt that she had "lost part of [herself]" when he died. She was unable to drive for six months following the collision and was "still riddled with fear when riding in a car." Taylor's stepfather had suffered from depression and anxiety since Taylor's death. He and Taylor's mother both took medication for anxiety and insomnia. Taylor's mother expressed her anguish over the loss of her son and dismay over appellant's actions. She asserted that driving while intoxicated was a "choice made sober" and

the consequence of those choices was not an accident.  Accordingly, she asked the court for "the justice" Taylor "deserved for his life being stolen."

In argument, the Commonwealth cited the victim impact statement as "a perfect and succinct statement to the Court" and asked for "a sentence that could bring justice for [Taylor]."  In response, appellant expressed "sympathy and regret for his actions."  He proffered that he had fled from El Salvador five years earlier because of gang violence.  He argued that his actions were involuntary and emphasized that he cried for several minutes when he learned of Taylor's death in the hospital.  Appellant asked the court to consider the discretionary sentencing guidelines,[3] which reflected his lack of criminal history.  In allocution, appellant apologized to Taylor's family and asked for their forgiveness.  He stated that he made a "mistake" and was "not a bad person."

The court "reviewed and considered the presentence report, the sentencing guidelines, the victim impact statement, evidence presented, the argument by counsel, and [appellant's] statement." It found that this case was a "tragedy" that was "aggravated by the senselessness and needlessness" of Taylor's death.  Quoting the victim impact statement, the court found that appellant chose to "drive without a license to a bar," "to sit at that bar and drink alcohol at the age of 20," and "to drive a vehicle while intoxicated."  The court credited appellant's remorse but found that his decisions evinced reckless disregard for human life and the consequence of those decisions was not an accident.  Accordingly, the court sentenced appellant to twenty years of incarceration.  This appeal follows.

---

[3] The discretionary sentencing guidelines recommended a sentence between three years and four months of incarceration and eight years and two months of incarceration, with a midpoint of six years and three months.

ANALYSIS

A. Sufficiency of the Evidence

Appellant argues that the evidence was insufficient to sustain his conviction for aggravated involuntary manslaughter because it failed to demonstrate that his conduct "was so gross, wanton, and culpable as to show a reckless disregard for human life." He argues that not all "drunk-driving" related homicides are punishable as aggravated involuntary manslaughter and emphasizes that appellant's blood alcohol concentration was not high enough to "elevate[] punishment for a first offense DUI." Appellant, however, did not preserve his sufficiency argument for appeal.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Rule 5A:18 requires a litigant to make timely and specific objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Brown v. Commonwealth*, 279 Va. 210, 217 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 337 (2004)). "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

"To preserve an argument concerning the sufficiency of the evidence in a bench trial, a defendant 'must make a motion to strike at the conclusion of all the evidence, present an appropriate argument in summation, or make a motion to set aside the verdict.'" *Taylor v. Commonwealth*, 58 Va. App. 185, 189 (2011) (quoting *Howard v. Commonwealth*, 21 Va. App. 473, 478 (1995)). "[T]he failure to object to the sufficiency of all the evidence is a waiver of that

issue just as if the defendant 'failed to object to any other matter at trial.'" *Murillo-Rodriguez v. Commonwealth*, 279 Va. 64, 80 (2010) (quoting *White v. Commonwealth*, 3 Va. App. 231, 233 (1986)). Appellant neither moved to strike the Commonwealth's evidence nor presented any closing argument to the trial court. He also did not move to set aside the verdict or ask the court to reconsider its ruling. Accordingly, he failed to preserve the sufficiency challenge he now raises on appeal. *See Taylor*, 58 Va. App. at 189 ("Sufficiency arguments not properly preserved are waived on appeal.").

Nevertheless, appellant maintains that he preserved his sufficiency argument in his "opening statement," where he explained that the "gist" of his defense was "in term[s] of the gross, wanton, or culpable with an intentional reckless disregard for human life." We disagree. The purpose of an opening statement "is merely to inform the [fact finder] of what counsel expects the evidence to be so that [it] may better understand the evidence." *Field v. Commonwealth*, 2 Va. App. 300, 307 (1986). It "does not involve the admission of evidence." *Riverside Hosp., Inc. v. Johnson*, 272 Va. 518, 525 (2006). Nor does it ask the trial court to rule on the legal sufficiency of the evidence. *See McQuinn v. Commonwealth*, 20 Va. App. 753, 757 (1995) ("A motion to strike, made at the conclusion of the Commonwealth's evidence, addresses the sufficiency of proof *within the context of that evidence*." (emphasis added)); *Hoover v. West Virginia Bd. of Medicine*, 602 S.E.2d 466, 469 (W.Va. 2004) ("[A]n opening statement . . . , having no evidentiary value, cannot operate to place an issue in controversy."). Accordingly, appellant did not preserve an objection to the sufficiency of the evidence with his opening statement. *Cf. Murillo-Rodriguez*, 279 Va. at 80-81 (holding that a motion to strike the evidence preserves an objection to the sufficiency of the evidence on appeal only if it is made *after* all the evidence has been admitted).

Alternatively, appellant requests that we consider his argument under the good cause and ends of justice exceptions to Rule 5A:18. "'Good cause' relates to the reason why an objection was not stated at the time of the ruling." *Pope v. Commonwealth*, 60 Va. App. 486, 508 (2012) (quoting *Campbell v. Commonwealth*, 14 Va. App. 988, 996 (1992) (*en banc*)). "The Court may only invoke the 'good cause' exception where an appellant did not have the *opportunity* to object to a ruling in the trial court; however, when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply." *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011) (emphasis added) (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)). The record demonstrates that appellant *twice* declined the opportunity to present closing argument at the conclusion of the evidence. Accordingly, the good cause exception is not applicable because there was ample opportunity for appellant to object to the sufficiency of the evidence.

"The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (*en banc*) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). "[T]o invoke the ends of justice exception when sufficiency of the evidence has been raised for the first time on appeal, an appellant must do more than show that the Commonwealth *failed* to prove an element or elements of the offense." *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997). "Otherwise, we would be required under the ends

of justice exception to address the merits of every case where a defendant has failed to move to strike the Commonwealth's evidence as being insufficient to prove an element of the offense." *Id.* Instead, to demonstrate that a miscarriage of justice has occurred, an "appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." *Id.* at 222.

Appellant contends that the evidence failed to prove that his conduct "was so gross, wanton, and culpable as to show a reckless disregard for human life." He argues that not all "drunk-driving" related homicides are punishable as aggravated involuntary manslaughter and emphasizes that appellant's blood alcohol concentration was not high enough to "elevate[] punishment for a first offense DUI." Those arguments, however, are merely attempts to demonstrate that "the Commonwealth *failed* to prove an element . . . of the offense" and are, therefore, legally insufficient to satisfy the ends of justice exception to a sufficiency argument that is raised for the first time on appeal. *Id.* at 221. Appellant points to nothing in the record affirmatively proving that an element of the offense did not occur or that appellant was convicted for non-criminal conduct. Accordingly, the ends of justice exception does not apply, and Rule 5A:18 bars consideration of appellant's argument.

## B. Sentencing

Appellant contends that the trial court abused its discretion by imposing a sentence that "more than doubled the high-end recommendation of the sentencing guidelines." He argues that his sentence, which was the "statutory maximum period of incarceration," was "unreasonable," disproportionate to his offense, and "outside the bound" of "conscientious judgment." Appellant asserts that the court employed a "single variable analysis" that focused on the "tragic result" and disregarded extensive mitigating evidence.

"The sentencing guidelines are advisory only and do not require trial courts to impose specific sentences." *Runyon v. Commonwealth*, 29 Va. App. 573, 577-78 (1999). Accordingly, a judge's failure to follow the sentencing guidelines is "not reviewable on appeal or the basis of any other post-conviction relief." Code § 19.2-298.01(F). Additionally, this Court declines to engage in a proportionality review in cases that do not involve life sentences without the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 654 (2011). "It lies within the province of the legislature to define and classify crimes and to determine the punishments for those crimes." *DePriest v. Commonwealth*, 33 Va. App. 754, 764 (2000). "No punishment authorized by statute, even though severe, is cruel and unusual unless it is one 'prescribing a punishment in quantum so severe for a comparatively trivial offense that it would be so out of proportion to the crime as to shock the conscience . . . .'" *Id.* (quoting *Hart v. Commonwealth*, 131 Va. 726, 745 (1921)). Appellant's offense was not trivial; his sentence does not shock the conscience.

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). It is well-established that "when a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565). Here, appellant's sentence was within the range set by the legislature. *See* Code § 18.2-36.1(B) (providing that "aggravated involuntary manslaughter" is "a felony punishable by a term of imprisonment of not less than one nor more than 20 years, one year of which shall be a mandatory minimum term of imprisonment").

It was within the trial court's purview to weigh the mitigating evidence appellant presented. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* Here, the record demonstrates that the trial court "reviewed and considered" the mitigating evidence appellant cites on appeal and credited appellant's statement in allocution that he was "sorry." Balanced against that evidence, however, was the death of a blameless young man and the devastating, life-altering impact on his family. After considering all the circumstances, the trial court imposed the sentence that it deemed appropriate. That sentence "does not exceed [the statutory] maximum," and our task is complete. *Id.* at 564-65; *see also Thomason*, 69 Va. App. at 99 ("Appellant's sentence was within the statutory range, and our task is complete.").[4]

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*

---

[4] To the extent appellant argues we should overrule *Minh Duy Du* and *Thomason* we must decline his invitation. "'[W]e are bound by decisions of the Supreme Court of Virginia and are without authority to overrule' them." *Vay v. Commonwealth*, 67 Va. App. 236, 258 n.6 (2017) (quoting *Roane v. Roane*, 12 Va. App. 989, 993 (1991)). Furthermore, under the doctrine of interpanel accord, "a decision of a panel of the Court of Appeals becomes a predicate for application of the doctrine of *stare decisis* until overruled by a decision of the Court of Appeals sitting *en banc* or by a decision of [the Supreme] Court." *Brown v. Commonwealth*, 68 Va. App. 44, 51 n.1 (2017) (quoting *Johnson v. Commonwealth*, 252 Va. 425, 430 (1996)). "This principle applies not merely to the literal holding of the case, but also to its *ratio decidendi*—the essential rationale in the case that determines the judgment." *Hutton v. Commonwealth*, 66 Va. App. 714, 724 n.5 (2016) (quoting *Clinchfield Coal Co. v. Reed*, 40 Va. App. 69, 73-74 (2003)).