UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, AtLee and Senior Judge Clements
Argued at Lexington, Virginia

ASHBY COLEMAN

MEMORANDUM OPINION[*] BY
v.       Record No. 0096-16-3       JUDGE RICHARD Y. ATLEE, JR.
DECEMBER 27, 2016

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

J. Lloyd Snook, III (Snook & Haughey, P.C., on briefs), for
appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

A jury in the Circuit Court of Campbell County ("trial court") convicted appellant Ashby

Coleman of two counts of distributing child pornography. He received a sentence of five years

in prison for each charge, the minimum sentence. The trial court suspended four years, yielding

an active sentence of six years. The charges arose from two photos Coleman uploaded to a

public Pinterest[1] page. Exhibit One depicted a close shot of male and female genitalia. Exhibit

Two depicted three nude young women lying on their stomachs on a bed, facing away from the

camera with their legs spread. In seven assignments of error, Coleman argues the trial court

erred in (1) finding that either photo was a "lewd" depiction of nudity; (2) finding that either

photo depicted a minor; (3) finding that Coleman took knowing action with respect to Exhibit

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] "Pinterest allows users to organize and share images, or 'pins' on virtual 'pinboards'—
akin to public online bulletin boards. Users can then browse the pinboards of other users and
're-pin' any content therein. Users can also post comments on pins of their own or pins of
others." Paul D. McGrady, Jr., McGrady on Social Media § 34.02 (2017).

Two; (4) denying Coleman's request to set aside the verdict because the jury was not instructed on what it means to "knowingly" distribute lewd photos of minors; and (5) allowing the Commonwealth to argue to the jury that the appearance of the subjects in the pictures can be used to infer the age of the subjects. For the following reasons, we affirm.

## I. FACTS

Officers with the Southern Virginia Internet Crimes Against Children Task Force ("ICAC") opened an investigation after receiving information from the National Center for Missing and Exploited Children that included two photographs officers suspected "in [their] professional opinion," to be child pornography, an email address associated with the Pinterest account where the images were found, and the IP address from which the images were uploaded, which was associated with Coleman's residence. As part of this investigation, law enforcement officers from the ICAC visited the Coleman home. Coleman's mother answered the door. While one officer was explaining to her that they had received a "cyber tip" regarding suspected child pornography, Coleman approached and said "I think I'm the one you're looking for." Coleman admitted that the email address associated with the Pinterest account was his, and acknowledged that he has posted Exhibit One to the website. One officer testified that although he knew he showed Coleman Exhibit One, he did not recall with certainty whether he showed Coleman Exhibit Two. He "believe[d]" he did, but recalled that he also "didn't want to expose [Coleman's] mother to that at the time."

At trial, Coleman testified that he had struggled with pornography since middle school. Coleman's mother stated that she had a "zero tolerance policy" towards pornography, so when she discovered Coleman had been viewing it, she installed software on his computer that blocked access to certain websites and provided her with logs of websites he visited, along with other measures. After Coleman turned eighteen, he went to college. Because Pinterest was not

- 2 -

blocked by the software, he used that website to post photos for later viewing. Although

Coleman testified that he posted the photos for personal use, he "knew that there was a

possibility that other people might see them." He stated that he did not specifically recall posting

Exhibit Two, but conceded that he was not aware of anyone else posting images to his account.

Coleman further confirmed that his account was password-protected. He acknowledged that,

while looking for images of girls his own age, he had used the search term "kiddy porn" when

other terms appeared to provide only adult pornography. When he was older, after searches for

sixteen and seventeen-year-old girls failed to yield the desired results, he told an investigator that

he "put the search terms a little lower." He maintained at trial, however, that he believed he only

ever obtained adult pornography.

## II. SUFFICIENCY OF THE EVIDENCE

Coleman argues the evidence is insufficient to show that either photo depicted minors or

was a "lewd depiction of nudity." He also claims the Commonwealth failed to prove he

knowingly distributed Exhibit Two. "Whether the evidence adduced is sufficient to prove each

of those elements is a factual finding, which will not be set aside on appeal unless it is plainly

wrong." Lawlor v. Commonwealth, 285 Va. 187, 223-24, 738 S.E.2d 847, 868 (2013). "In

reviewing that factual finding, we consider the evidence in the light most favorable to the

Commonwealth and give it the benefit of all reasonable inferences fairly deducible therefrom."

Id. at 224, 738 S.E.2d at 868.

> An appellate court is "not permitted to reweigh the evidence,"
> Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007),
> or "to substitute its own judgment for that of the finder of fact,
> even if the appellate court might have reached a different
> conclusion," Commonwealth v. Presley, 256 Va. 465, 466, 507
> S.E.2d 72, 72 (1998). As an appellate court, we do not
> second-guess the trier of fact by declaring how we would have
> decided the case, rather, we determine "after viewing the evidence
> in the light most favorable to the prosecution, [whether] *any*
> rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).

Hutton v. Commonwealth, 66 Va. App. 714, 719, 791 S.E.2d 750, ___ (2016) (alteration in original). In our review, we are mindful that, even if Coleman did not seek images of girls who were many years younger than he was, "the General Assembly's 'paramount legislative goal' in enacting Code § 18.2-374.1 'was to protect children from the harm they suffer when they are induced to become models' in sexually explicit materials." Chapman v. Commonwealth, 56 Va. App. 725, 733, 697 S.E.2d 20, 24 (2010) (quoting Freeman v. Commonwealth, 223 Va. 301, 309, 288 S.E.2d 461, 465 (1982)); see also Papol v. Commonwealth, 63 Va. App. 150, 153, 754 S.E.2d 918, 920 (2014) (noting "the underlying purpose of the statute [is] to protect children from pornographers, pedophiles, and others who seek to take advantage of their vulnerabilities"). For that, and the reasons that follow, we find the evidence sufficient for both convictions.

A. Age of Females in Photos

Coleman argues that the trial court erred in finding that either photo depicted underage subjects. We have no evidence as to the identities of the individuals in the images, and thus the jury was left to infer their ages from other evidence. See Terlecki v. Commonwealth, 65 Va. App. 13, 20, 772 S.E.2d 777, 781 (2015) (noting that the evidence need not prove "the actual identity of the identifiable minor" (quoting Code § 18.2-374.1(A))). Viewing this evidence in the light most favorable to the Commonwealth, as we must as it was the prevailing party below, we cannot say the jury was plainly wrong in finding that both images depicted minors.

First, Coleman testified that, as a minor, he sought out pornography that featured girls his own age. He told an investigator that he had used the search term "kiddy porn" and had "put the search terms a little lower" when his searches for sixteen and seventeen-year-old girls failed to yield the desired results.

Second, the appearance of the females in the photos suggests they are underage.  Exhibit One is a black-and-white image depicting a visibly erect penis touching the labia of a disproportionately small vagina.  The photo does not show either subject's face or torso; however, several factors indicate that the female is a juvenile.  The female depicted has no pubic hair, or any sign that her pubic hair was removed.  In addition, the narrowness of her hips, the disparity between the size of her and the male's genitalia, and other factors indicate that, at the time of the photo, she had not yet undergone puberty and was underage.

Regarding Exhibit Two, Coleman's own arguments before the trial court undermine his claim that the image does not depict at least one minor.  In arguing his motion to set aside the verdict, defense counsel stated "it seems clear that the one of the three girls would appear to be actual minors" and that "it's highly likely that they're juveniles."  "[I]n deciding a motion to set aside the verdict, a court only looks to whether the jury's verdict is 'plainly wrong or without evidence to support it.'"  Wagoner v. Commonwealth, 289 Va. 476, 484, 770 S.E.2d 479, 484 (2015) (quoting Code § 8.01-680).  By counsel's own admission, Exhibit Two "clear[ly]" depicted at least one minor, and as such, the finding that Exhibit Two depicted a minor could not be plainly wrong or lack supporting evidence.[2]  For these reasons, the jury did not err in finding both images depicted minors.

### B.  Lewdness of Photos

Coleman next argues that neither image is a "lewd" depiction of nudity.  Code § 18.2-374.1:1 prohibits distribution of child pornography, defined as "sexually explicit visual material which utilizes or has as a subject an identifiable minor."  Code § 18.2-374.1(A).

---

[2] Furthermore, Exhibit Two contained a watermark referencing a website run by a man who, as one officer with the ICAC testified, "is known for specializing in some barely legal as well as Lolita," and was "involved in the founding of several websites depicting erotic photography of teenagers."  "Lolita" is a common reference to child pornography.  See Kromer v. Commonwealth, 45 Va. App. 812, 815, 613 S.E.2d 871, 872 (2005).

"Sexually explicit visual material" includes, *inter alia*, visual representations of "a lewd exhibition of nudity," "sexual excitement," or "sexual conduct." Id.

Exhibit One is clearly sexually explicit visual material as defined by Code § 18.2-374.1(A), as it is a visual representation of "sexual conduct" and "sexual excitement." Under Code § 18.2-390(3), "'[s]exual conduct' means actual or explicitly simulated acts of masturbation, homosexuality, sexual intercourse, or *physical contact in an act of apparent sexual stimulation* or gratification with a person's clothed or unclothed genitals, pubic area, buttocks or, if such be female, breast," (emphasis added), and "'[s]exual excitement' means the condition of human male or female genitals when in a state of sexual stimulation or arousal," Code § 18.2-390(4). In this image, the male is unmistakably visibly aroused while touching his genitals to the female's. Accordingly, we need not determine if the image is a "lewd exhibition of nudity," as it depicts sexual conduct and sexual excitement, and thus is sexually explicit visual material under the statute.

Coleman also argues that Exhibit Two is not a lewd depiction of nudity, and therefore is not sexually explicit visual material.

> Nude photographs are sexually explicit if they are "lewd." Code § 18.2-374.1. "'Lewd' is a synonym of 'lascivious' and 'indecent.'" Dickerson v. City of Richmond, 2 Va. App. 473, 479, 346 S.E.2d 333, 336 (1986). This Court has also "defined 'lascivious' to mean 'a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite.'" Id.

Asa v. Commonwealth, 17 Va. App. 714, 718, 441 S.E.2d 26, 29 (1994). This is inherently a fact-dependent inquiry, and we may not "substitute [our] own judgment for that of the finder of fact, even if we might have reached a different conclusion." Hutton, 66 Va. App. at 719, 791 S.E.2d at ___ (quoting Presley, 256 Va. at 466, 507 S.E.2d at 72).

Exhibit Two is a color image depicting three females lying in a bed, a sexually suggestive setting. Furthermore, they are positioned in a manner that could reasonably be interpreted, and Coleman did in fact interpret, as sexually provocative or enticing. They are completely nude, facing away from the camera with their legs spread so their buttocks and labia are visible. Their limbs are overlapping. One of the girls has her head laying on top of her arms in a submissive posture. Finally, their genitalia are positioned at the center of the image. See Asa, 17 Va. App. at 718-19, 441 S.E.2d at 29 (emphasizing the fact that the "camera's eye focused on [the subject's] genitalia," which spoke to the image's lewdness). Viewed in the totality, we cannot say the jury erred in finding this to be a lewd display of nudity.

### C. Coleman's "Knowing" Distribution of Exhibit Two

Coleman argues that there is insufficient evidence that he knowingly posted Exhibit Two to the internet. He argues essentially that, because the investigator only was certain he showed Coleman Exhibit One, and Coleman testified that he only remembered posting that image, there is no evidence he posted the second image. However, a lack of an express admission does not mean there is no evidence. To the contrary, the record contains substantial evidence that he posted both images. Both images were posted to the same Pinterest account, which was associated with Coleman's personal email address. The account was password-protected, and Coleman had no knowledge of anyone else posting to it. Furthermore, Coleman never denied posting Exhibit Two, and the record contains no evidence indicating that someone else did so. Given the lack of evidence that someone else accessed Coleman's personal account, and his admission that he posted Exhibit One, the only reasonable inference is that Coleman was responsible for the presence of both images on the Pinterest page.

### III. *MENS REA* JURY INSTRUCTION

Coleman argues that the trial court erred in giving a jury instruction that "did not on its face include a requirement that the jury could only convict if they found that [he] knowingly distributed child pornography — that the Commonwealth had to prove not merely intentional conduct, but knowing conduct." Coleman did not raise this issue before the trial court, and as such, this argument is procedurally defaulted. Rule 5A:18 states: "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Coleman acknowledges that he did not preserve this objection at trial, and asks us to find that this alleged error warrants applying Rule 5A:18's "ends of justice" exception. We apply this exception only "to avoid a grave injustice or the denial of essential rights," Charles v. Commonwealth, 270 Va. 14, 17, 613 S.E.2d 432, 433 (2005), and only when the record shows "that a miscarriage of justice has occurred, not when it merely shows that a miscarriage *might* have occurred," Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987). Here, there is no evidence that such a miscarriage of justice occurred, as there was evidence both that he knew or could have known the females depicted were underage, see supra Part II.A., and knew he was making the images publically accessible. Accordingly, a jury could have convicted appellant even if they had been explicitly directed to find he acted knowingly. This argument is therefore waived.

### IV. INFERENCE AS TO AGE

Coleman challenges the trial court permitting the Commonwealth to argue before the jury about the meaning of one jury instruction that read: "[i]t may be inferred by text, title or appearance that a person who is depicted as or presents the appearance of being less than 18 years of age in sexually explicit visual material is less than 18 years of age." Coleman

repeatedly characterizes this instruction, and the statute containing this language, Code § 18.2-374.1:1, as "burden-shifting," in that it relieves the Commonwealth of the burden of proving that the individuals in the images are minors, or at least lessens that burden.[3] He alleges that the Commonwealth's argument "invited the jury to speculate as to the age of the subjects of the photographs."

As a preliminary matter, assuming without deciding that these issues were properly preserved,[4] this instruction is not "burden-shifting." Rather, by its express language, the instruction presents a permissible, not mandatory, inference. It states that a jury *may* conclude from evidence other than an individual's identity, including her appearance, that she is a minor. See Dobson v. Commonwealth, 260 Va. 71, 75, 531 S.E.2d 569, 572 (2000) ("A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves the predicate facts, but does not require the jury to draw that conclusion." (quoting Francis v. Franklin, 471 U.S. 307, 314 (1985))).

Moreover, the Commonwealth's statements to the jury properly characterized the instruction as permissive. In closing argument, the Commonwealth explained the instruction as meaning: "if it looks like a child, you *may* find as a jury that it is a child." (Emphasis added). During its rebuttal closing, the Commonwealth explained:

> Ladies and gentlemen, I'm not asking you to speculate. What I'm
> asking you to do is take your real life experience and take your
> own intelligence and your own — trust your own eyes that when
> you are looking at something that appears to be a child, you are not

---

[3] In his reply brief, Coleman clarifies that he does not allege a constitutional violation, despite his repeated statement that this language is "burden-shifting," which suggests a due process argument. See Yap v. Commonwealth, 49 Va. App. 622, 632, 643 S.E.2d 523, 527 (2007). He also explains that he cited First Amendment jurisprudence not to allege a First Amendment claim, but "because the First Amendment standards define the limits of the statute."

[4] Coleman concedes that he did not object to the jury instruction itself, but only presented similar arguments (that, much like the argument presented here on appeal, challenge the sufficiency of the evidence) in his motion to strike.

> required to suspend all reasonable thought unless a school ID is
> produced or a driver's license or a birth certificate.

The trial court did not err in permitting this argument. Just as "a trier of fact is competent to determine whether pornographic images depict actual people simply by looking at the images themselves," Terlecki, 65 Va. App. at 21, 772 S.E.2d at 781, a jury is competent to determine if images depict minors. Furthermore, the Commonwealth presented evidence other than appearance, including Coleman's own statements, that supported the jury's conclusion that these were images of underage females. See supra Part II.A. Coleman's argument that the Commonwealth "invited the jury to speculate" is without merit (and undermined by the Commonwealth's explicit statement: "I'm not asking you to speculate"). The trial court did not err in permitting the Commonwealth's statements during closing arguments.

## V. CONCLUSION

Finding no error in the trial court's rulings, we affirm Coleman's convictions.

Affirmed.