UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Huff and Chaney
Argued at Norfolk, Virginia

KEVIN ORLANDO BOWLES

v.        Record No. 1355-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE VERNIDA R. CHANEY
AUGUST 15, 2023

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Holly B. Smith, Judge[1]

(Charles E. Haden, on brief), for appellant.  Appellant submitting
on brief.

David A. Mick, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following his guilty pleas, the trial court convicted Kevin Orlando Bowles of possession of

a Schedule I controlled substance and driving under the influence, third or subsequent offense

within five years.  The trial court sentenced Bowles to a total of ten years of incarceration with eight

years and five months suspended.  On appeal, Bowles challenges the voluntariness of his guilty

pleas and argues that the sentence the trial court imposed represents an abuse of its sentencing

discretion.  Finding no error in the trial court's judgment, this Court affirms Bowles's convictions.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The Honorable Charles J. Maxfield, judge designate, presided over Bowles's guilty
plea.

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This Court "discard[s] the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Before accepting Bowles's guilty pleas, the trial court conducted a colloquy with him to ensure that his pleas were entered freely and voluntarily. During the colloquy, Bowles confirmed that he had spoken with his attorney and fully understood what the Commonwealth needed to prove for a conviction. Bowles understood that by pleading guilty he was waiving his rights to a trial by jury, to confront the witnesses against him, and to appeal certain decisions of the court. Bowles confirmed that he was pleading guilty "freely and voluntarily" and that no one had forced him to enter his pleas. R. 108-10. Bowles understood that the driving charge carried a six-month mandatory minimum term of incarceration and that the trial court could sentence him to a total maximum of 15 years of incarceration. Bowles also understood that the trial court was not bound by the discretionary sentencing guidelines.

The Commonwealth proffered that on August 13, 2021, shortly before midnight, James City County emergency dispatch received a call regarding a driver weaving in the lane, crossing marked lines, and braking erratically. After describing the car and providing the tag number, the caller indicated to police that the car had parked at a local hotel. When an officer arrived and noted a car matching the caller's description, Bowles, the driver, stepped out of the car. Bowles's mother and two minor daughters were also in the car. Police determined that Bowles's driver's license was revoked for a prior conviction for driving under the influence. Bowles was described as "unsteady on his feet" with "bloodshot eyes" and smelled of alcohol. R. 115. Bowles performed field sobriety tests, though he was unable to follow directions, struggled with his balance, and displayed a lack of coordination. The officer searched Bowles incident to his arrest for driving under the influence and

- 2 -

found a rock-like substance that ultimately tested positive for Eutylone.  An analysis of Bowles's blood performed by the Department of Forensic Science (DFS) showed a blood alcohol concentration of 0.116%.  The Commonwealth entered three documents into evidence: the DFS certificate indicating the rock-like substance contained Eutylone, the DFS certificate showing Bowles's blood alcohol content, and Bowles's driving transcript.

The trial court accepted Bowles's pleas, making a finding that they were freely, intelligently, and voluntarily made with an understanding of the nature of the charges and the consequences of the pleas.  Based on the pleas and the proffered evidence, the trial court convicted Bowles of possession of a Schedule I controlled substance and driving under the influence, third or subsequent offense within five years. [2]

At the sentencing hearing, Bowles testified on his own behalf.  He reported the mental health counseling that he had been engaged in since his 2016 schizophrenia diagnosis.  Bowles noted that he had attended—and successfully completed—both an inpatient program and a virtual outpatient program.  Bowles entered three letters into evidence: one from his inpatient program, one from his outpatient program, and one from his case manager.  Bowles told the court that he had been sober for a year and had provided exclusively negative urine screens while on pretrial supervision.  Bowles further testified that he cares for his disabled mother and has a relationship with his five children.  Bowles had permanent supportive housing provided through a grant and had been assured that he could get a job with a local grocery store.

Bowles argued that the trial court should sentence him to an alternative disposition, such as house arrest.  In support of this argument, Bowles noted his mental health issues, his ongoing sobriety, and the support system he had put in place.  The Commonwealth argued that the trial court

---

[2] In exchange for his pleas, the Commonwealth moved to nolle prosequi additional charges of driving with a revoked driver's license and two counts of felony child abuse.

should impose a sentence at the midpoint of the discretionary sentencing guidelines. [3] The Commonwealth contended that Bowles's answers on the presentence report showed a refusal to take responsibility for his crimes. Moreover, Bowles's history of drug offenses was inconsistent with his statements denying a drug or alcohol problem.

The trial court found the facts to be serious and stated that "the fact that [Bowles did]n't really necessarily agree that [he] committed an offense" was "something . . . to consider." R. 154. The trial court further noted the fact that Bowles had a "lengthy history of substance abuse" and was on supervision at the time of these offenses. R. 154. On the other hand, the trial court found mitigating that "there's been some good progress recently with [Bowles's] counselors." R. 155. The trial court commended Bowles's steady housing and noted that the letters received in evidence showed that Bowles was "compliant with" the rehabilitation programs and further found Bowles's attendance of sober support meetings and treatment mitigating. R. 155. Accordingly, the trial court sentenced Bowles to one year and seven months of active incarceration. He appeals.

ANALYSIS

I. Guilty Pleas

Bowles argues that the trial court erred by accepting his guilty pleas because he did not enter them freely and voluntarily. He argues that "the record failed to establish" that he "was given notice of the elements of [the offenses]" or "what the Commonwealth must prove before [he] could be" convicted. Op. Br. 12. He also argues that he was not "made aware of the various collateral consequences of his pleas of guilty," including the loss of his rights to vote and possess a firearm and disqualification of certain public benefits and occupational licenses. Op. Br. 14. Relying on *Padilla v. Kentucky*, 559 U.S. 356 (2010), Bowles suggests that the failure to advise him of those

---

[3] The discretionary sentencing guidelines recommended a total sentence between one year and seven months' incarceration and three years and four months' incarceration, with a midpoint of two years and ten months.

collateral consequences rendered his pleas invalid. Bowles acknowledges that he did not move to withdraw his guilty pleas or otherwise preserve his argument for appellate review but asks that we address it under the "good cause" and "ends of justice" exceptions to Rule 5A:18.[4]

"'Good cause' relates to the reason why an objection was not stated at the time of the ruling." *Pope v. Commonwealth*, 60 Va. App. 486, 508 (2012) (quoting *Campbell v. Commonwealth*, 14 Va. App. 988, 996 (1992) (en banc)). "The Court may only invoke the 'good cause' exception where an appellant did not have the *opportunity* to object to a ruling in the trial court; however, when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply." *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011) (emphasis added) (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)).

The trial court accepted Bowles's guilty pleas on March 7, 2022 and entered final judgment on August 18, 2022. Thus, Bowles had over five months to move to withdraw his guilty pleas but failed to do so. Code § 19.2-296 (providing that a trial court, "to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea"). Nothing in the record suggests that anything prevented Bowles from filing such a motion. Accordingly, the good cause exception does not apply because there was ample opportunity for Bowles to alert the trial court of the relief he sought. Moreover, there were valid strategic reasons for not doing so considering the charges the Commonwealth moved to nolle prosequi in exchange for Bowles's pleas. Combined, those charges presented a potential sentencing exposure of an additional 10 years and 12 months. *See* Code §§ 18.2-10, 18.2-11, 18.2-272, 18.2-371.1(B).

---

[4] "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18.

"The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)).  Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice."  *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)).  "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant."  *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)).  "In order to avail oneself of the exception, a *defendant must affirmatively show* that a miscarriage of justice has occurred, not that a miscarriage might have occurred."  *Melick*, 69 Va. App. at 146 (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)).  Furthermore, to demonstrate that a miscarriage of justice has occurred, "[i]t is never enough for the defendant to merely assert a winning argument on the merits—for if that were enough[,] procedural default 'would never apply, except when it does not matter.'"  *Winslow v. Commonwealth*, 62 Va. App. 539, 546 (2013) (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 710 (2010)).

A defendant who enters a guilty plea waives several rights, so a "plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'"  *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).  Thus, to withstand scrutiny on appeal, the record must contain "an affirmative showing that [the guilty plea] was intelligent and voluntary."  *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

The record demonstrates that the trial court conducted a thorough colloquy with Bowles, in which he confirmed that he had discussed the charges and their elements with his attorney.  *See Hill v. Commonwealth*, 47 Va. App. 667, 674-75 (2006) (rejecting a defendant's challenge

on direct appeal to the voluntariness of his conditional guilty plea because his statements during the plea colloquy demonstrated that his plea "was made voluntarily, knowingly, and intelligently" (citing *Boykin*, 395 U.S. at 242)).[5] Bowles stated he understood "what the state would have to prove" before he could be found guilty. R. 107-08. He further understood the penalties each charge carried, including the six-month mandatory minimum term of incarceration for the driving offense. In addition, Bowles knew that he was waiving several important trial rights, including the rights to a jury trial, silence, confrontation, and to appeal certain decisions of the court. Bowles also confirmed that no one had made any threats or promises, other than the nolle prosequied charges, to induce his guilty pleas. Thus, the record contains "an affirmative showing" that Bowles's guilty pleas were "intelligent and voluntary." *Boykin*, 395 U.S. at 242.

No authority requires that the trial court review each of the specific elements of the offenses for Bowles's guilty pleas to be valid, and we are unpersuaded by his contrary argument. "A circuit court may not accept a plea of guilty . . . without first determining that the plea is made . . . with an understanding of *the nature* of the charge and the consequences of the plea." Rule 3A:8(b)(1) (emphasis added); *see also* Rule 7C:6; *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (holding that a defendant must receive "real notice of the true *nature* of the charge against him" for a plea to be voluntary (emphasis added) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941))). Here, Bowles affirmatively represented that he understood the charges against him and what the Commonwealth had to prove for the trial court to find him guilty of those charges. After that discussion, Bowles decided to plead guilty because he was "in fact guilty." R. 108. Bowles

---

[5] Although relying on "admissions made by a defendant in a guilty plea and the attendant colloquy . . . is misplaced in the context of a Code § 19.2-296 *motion to withdraw a guilty plea*," Bowles did not move to withdraw his pleas in this case. *Hubbard v. Commonwealth*, 60 Va. App. 200, 208 (2012) (emphasis added) (quoting *Bottoms v. Commonwealth*, 281 Va. 23, 33 (2011)).

also understood the important trial rights he was giving up. Thus, he was aware of the nature of the charges and the consequences of his pleas.

Bowles also argues that his guilty pleas were not knowing and voluntary because the record does not demonstrate that he was advised of various "collateral consequences" of his pleas. Op. Br. 14. This argument lacks merit. "For a guilty plea to be constitutionally valid, a defendant must be made aware of all the direct, but not the collateral, consequences of his plea." *Brown v. Commonwealth*, 297 Va. 295, 302 (2019) (quoting *Meyer v. Branker*, 506 F.3d 358, 367-68 (4th Cir. 2007)). Indeed, a "trial court is not required to discuss every nuance of the law regarding a defendant's plea in order to render a guilty plea voluntary and knowing." *Zigta v. Commonwealth*, 38 Va. App. 149, 154 (2002). Moreover, Bowles's reliance on *Padilla* is misplaced. *Padilla* addressed a claim that the trial attorney was ineffective for failing to advise his client that he would be subject to deportation. Even assuming *Padilla* could be relevant to the voluntary nature of certain guilty pleas, Bowles has not presented any evidence or argument suggesting that he would be subject to deportation.

Finally, Bowles argues that the trial court was deficient in that it did not ask every one of the "Suggested Questions to Be Put by the Court to an Accused Who Has Pleaded Guilty," found in an appendix to the Rules of the Virginia Supreme Court. Op. Br. 12-14. *See* Va. Sup. Ct. R. Pt. 3A, App. Form 6. Bowles cites no precedent to support this argument. Moreover, the questions are, as the title notes, "suggested." They are not mandatory, and declining to ask each suggested question does not indicate a failure on the part of the trial court.

Accordingly, we conclude that the record contains an affirmative showing that Bowles's guilty pleas were entered knowingly, voluntarily, and intelligently. *Boykin*, 395 U.S. at 242. Thus, no manifest injustice will result by applying Rule 5A:18.

II. Sentencing

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)).

Bowles argues the trial court abused its discretion by not considering the mitigating evidence he presented. The record does not support Bowles's claim. The trial court received the mitigation evidence Bowles cites and expressly stated it was considering that evidence, including the "good progress" Bowles recently had made. R. 155. The trial court further expressly found that Bowles had "been maintaining steady housing" and that Bowles had been "compliant with" the rehabilitation programs and attended support meetings and treatment to help maintain his sobriety. R. 155. It was within the trial court's purview to weigh the mitigating circumstances Bowles presented. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000).

The trial court is not obligated to read into the record every factor considered and the weight given to each one. "Absent a statutory requirement to do so, 'a trial court is not required to give findings of fact and conclusions of law.'" *Bowman v. Commonwealth*, 290 Va. 492, 500 n.8 (2015) (quoting *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982)). Considering the record, there is no support for Bowles's argument that the trial court failed to consider his evidence.

Under settled principles, we may only consider whether the sentence fell outside the permissible statutory range. *See Minh Duy Du*, 292 Va. at 564; *Smith v. Commonwealth*, 26 Va. App. 620, 626 (1998); *Valentine v. Commonwealth*, 18 Va. App. 334, 339 (1994). "It lies within the province of the legislature to define and classify crimes and to determine the

punishments for those crimes." *DePriest v. Commonwealth*, 33 Va. App. 754, 764 (2000). "No punishment authorized by statute, even though severe, is cruel and unusual unless it is one 'prescribing a punishment in quantum so severe for a comparatively trivial offense that it would be so out of proportion to the crime as to shock the conscience . . . .'" *Id.* (quoting *Hart v. Commonwealth*, 131 Va. 726, 745 (1921)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565). Bowles was sentenced within the statutory ranges set by the legislature. *See* §§ 18.2-10, 18.2-250, 18.2-266, 18.2-270. Thus, our review is complete.

CONCLUSION

For the foregoing reasons, this Court affirms the trial court's judgment.

*Affirmed*.