# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judges Beales and Lorish
Argued at Richmond, Virginia


MICHAUD AROUR YANCEY

                                       MEMORANDUM OPINION[*] BY
v.        Record No. 0289-23-2            JUDGE RANDOLPH A. BEALES
                                         SEPTEMBER 17, 2024

COMMONWEALTH OF VIRGINIA


### FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

Samantha Offutt Thames, Senior Appellate Attorney (Virginia
Indigent Defense Commission, on briefs), for appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Michaud Arour Yancey of one count of

possession of child pornography, second or subsequent offense, in violation of Code

§ 18.2-374.1:1(B). On appeal, Yancey challenges the trial court's denial of his motion *in limine*,

one of his proffered jury instructions, and his motion to correct a purported clerical error on the

jury's guilty verdict form. He also challenges the sufficiency of the evidence to sustain his

conviction.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

# I. BACKGROUND[1]

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, [as] the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

## A. The Investigation

Detective Todd Perseghin, a former investigator with the Richmond City Police Department, testified at trial that he received a cyber tip from the National Center for Missing and Exploited Children about a particular email address that was associated with "[a]nime images depicting minors engaged in sexual acts with adults." After investigating the cyber tip, Detective Perseghin connected the email address to "a rooming house" in Richmond where Yancey lived with at least one roommate. Detective Perseghin recounted that on December 3, 2018, he and another officer went to Yancey's residence and interviewed Yancey in his bedroom. Yancey, who goes by the nickname "Sho," confirmed to the officers that the email address in question was his account, and "he also was able to provide descriptive information about the illustrator of the anime images," including the illustrator's name, "Fogbank."

When Detective Perseghin entered Yancey's bedroom, he saw that a "video game system was turned on at the time. And one of the monitors was a toddler-aged anime depicted or anime

---

[1] This record was partially sealed. "This appeal necessitates unsealing relevant portions of the record to resolve the issues raised." *Brandon v. Coffey*, 77 Va. App. 628, 632 n.2 (2023). "To the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

illustration of a toddler-aged female" who was "[e]ngaged in sexual acts."  Detective Perseghin stated that "Yancey actually identified several devices in the house that he said would probably have images similar to the Fogbank images that I was there investigating."  With Yancey's written consent, Detective Perseghin collected 15 electronic devices from Yancey's bedroom for further investigation.[2]  The investigating officers also asked Yancey to rate his technical abilities on a scale of one to ten, and he claimed that he "was a twelve."

Detective Perseghin further testified that he personally reviewed several of Yancey's electronic devices on which he observed over 100 anime images that depicted "prepubescent children engaged in sex acts, as well as anal, oral penetration by family members or individuals who have either a sexual or -- in a sexual sort of relationship, such as a grandfather, or boyfriend, or a father."  The anime images also depicted "prepubescent females being vaginally penetrated by seemingly adult males."  Detective Perseghin detailed that "in some of the images it is specifically perverse.  There are captions to the images and it spells out that the child's mother is leaving the house or the residence, as depicted in the image, and leaving the child with a boyfriend, or a father, or a grandfather."  Detective Perseghin specifically described some of the anime images as showing an adult male then sexually abusing, molesting, or sexually assaulting a small child.

Jessica Wright, an expert in digital forensic examination from the Virginia Attorney General's Office, testified that she examined Yancey's 15 electronic devices.  During the course of her examinations, Wright found evidence of suspected child pornography on Yancey's "Seagate external hard drive," his "hard drive on a Gateway laptop," and his "hard drive from an HP laptop."  Wright described Yancey's Seagate external hard drive as a storage device that is

---

[2] Yancey also provided the officers with the login information for several of his accounts, including his email address "shokiser20xx@gmail.com" and his password.

not capable of running programs or connecting to the Internet, and she explained that for digital material to get on the external hard drive, "[t]he user would have to put them on the device themselves." Wright noted that her examinations of the Gateway laptop "did show that the external hard drive was connected to that device at some point."

On Yancey's Seagate external hard drive, Wright found "16 suspected child pornography files."[3] The photographs of suspected child pornography — four of which were admitted as Commonwealth's Exhibits 9, 10, 11, and 12 — "were located in a folder named WHATSAPP FAP FAP," which Wright confirmed was "a user created folder."[4] The "WHATSAPP FAP FAP" folder was located within another user-created folder called "ShoDrop."

Wright testified that Yancey's HP laptop contained a password-protected user account called "The OhFaSho," which "was the only user-created account on this device." On Yancey's HP laptop, Wright also found "16 suspected child pornography files" located within a user-created folder that was also called "WHATSAPP FAP FAP." Wright stated that "the photos must have been put there by someone either downloading from a computer or the internet, or from another device" — including the photographs of suspected child pornography that were admitted as Commonwealth's Exhibits 9, 10, 11, and 12.

Wright further testified that Yancey's Gateway laptop also contained a user-created account called "The OhFaSho," which she stated was "definitely the primary account." On

---

[3] Detective Perseghin similarly testified that he observed "[s]uspected child pornography" on Yancey's Seagate external hard drive.

[4] Commonwealth's Exhibit 9 depicts a nude young girl sitting upright on a bed in a sexually suggestive position with her legs spread open, exposing her genitalia. Commonwealth's Exhibit 10 depicts a partially nude young girl sitting on the lap of an adult male whose face is blocked out; the subject's bare legs are spread open in a sexually suggestive position, exposing her genitalia. Commonwealth's Exhibit 11 depicts a partially nude young girl lying on a bed in a sexually suggestive position with her legs spread open, exposing her genitalia. Commonwealth's Exhibit 12 depicts a nude female toddler kneeling on the floor and performing oral sex on the erect penis of an adult male.

Yancey's Gateway laptop, Wright found "[o]ne suspected child pornography file" in "[u]nallocated space," which she described as the "space that is not currently being used by the system" and that requires a special software to access it. That photograph was admitted as Commonwealth's Exhibit 8.[5] Wright noted that "[t]he photo was deleted, so the data is unrecoverable," and she explained that "the photo had to have been put there by someone either downloading via the internet or connecting through another device."

Wright determined that the same "WHATSAPP FAP FAP" folder that was present on Yancey's Seagate external hard drive and his HP laptop had also been on Yancey's Gateway laptop because she "found a LNK file showing that the user had accessed the photos within the WHATSAPP FAP FAP folder." She described LNK files as "shortcuts to other files that are created by browsing and user activity in the system," and she stated that they are created when a file is opened. From the LNK file, Wright concluded that the "WHATSAPP FAP FAP" folder "was located on the C drive within the user account on two different locations," including "a downloads folder and a pictures folder." Wright found a LNK file for the photograph of suspected child pornography that was admitted as Commonwealth's Exhibit 7, and she determined that the photograph "had been viewed."[6]

A Richmond grand jury indicted Yancey on one count of possessing child pornography and three counts of possessing child pornography as a second or subsequent offense.

---

[5] Commonwealth's Exhibit 8 depicts a partially nude young girl sitting upright on a bed surrounded by stuffed animals; the subject is posed in a sexually suggestive manner with her legs spread open, exposing her genitalia.

[6] Commonwealth's Exhibit 7 depicts a nude young girl lying on the floor of what appears to be a bathroom; the subject is posed in a sexually suggestive position with her legs spread open, exposing her breasts and genitalia.

- 5 -

## B. Yancey's Motion *in Limine*

Before trial, Yancey's counsel filed a motion *in limine* seeking "to exclude any evidence of or references to images that are not the images for which he is charged." Yancey's counsel argued that any evidence related to the anime images was "unnecessarily prejudicial," "not probative of the issue at hand," and "improper character or propensity evidence." In response, the attorney for the Commonwealth proffered that she was not seeking to admit the approximately 170 anime images themselves into evidence. Rather, she sought permission from the trial court to allow "Detective Perseghin to review the images and be able to describe them so as to limit any prejudicial affect [*sic*] that it might have on the jury."

In its written order denying Yancey's motion *in limine*, the trial court found that "the evidence of the cartoon or drawn child pornography is relevant and probative to the issue of intent and of knowingly possessing such child pornography, as opposed to possession by mistake or accident, and further, the probative value of said evidence outweighs its incidental prejudice." The trial court noted that "a limiting instruction can be given to the jury to further minimize any incidental prejudice." The trial court also noted the representation of the attorney for the Commonwealth that no actual anime images would be shown to the jury.

## C. Yancey's Proffered Jury Instruction

At trial, counsel for Yancey did not object to the Commonwealth's proffered jury instructions. Among the parties' agreed-upon jury instructions, Instruction 12B read:

> Evidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith on a particular occasion. You must not consider evidence of the defendant's possession of cartoon images of sexually explicit material involving children as proof of a character trait in order to show that the defendant acted in conformity that trait. You may only consider such evidence in determining whether it tends to prove motive, intent, knowledge, or the absence of mistake or accident.

Yancey's counsel then proffered several defense instructions, one of which stated:

> You cannot find Mr. Yancey guilty of possession of child pornography based on his possession of cartoon images of sexually explicit material involving minors. You can only consider his possession of the cartoon images in deciding whether or not he knowingly and intentionally possessed the alleged child pornography photographs.

The attorney for the Commonwealth asked the trial court to add the word "solely" to the defense's proffered instruction, so that it would state:

> You cannot find Mr. Yancey guilty of possession of child pornography based *solely* on his possession of cartoon images of sexually explicit material involving minors. You can only consider his possession of the cartoon images in deciding whether or not he knowingly and intentionally possessed the alleged child pornography photographs.

(Emphasis added). Over the defense's objection, the trial court granted the modified instruction, which was given to the jury as Instruction 12A.

Yancey's counsel then proffered the following instruction:

> Evidence of other specific, similar acts [e.g., the possession of the cartoon images] does not logically support the inference that, because an accused previously committed a similar act, he has a propensity to commit acts of this nature and, therefore, he probably committed the act with which he stands charged [e.g., possession of the photographic images]. That inference would reverse his presumption of innocence and is therefore not permitted.

(Alterations in original). The trial judge denied this proffered instruction, stating, "I think we have covered adequately these cartoon images in the instruction we just decided to give."

### D. The Jury Verdicts

After the presentation of the evidence, the attorney for the Commonwealth provided the trial court with the four jury verdict forms, which were identical except for the unique case numbers. Each verdict form indicated that the charged offense was "Possession of Child

Pornography." The trial judge then handwrote in "a second or subsequent offense" on Instructions 14, 15, and 16, and he left Instruction 17 in its original form.

During deliberations, the jury wrote down the following question for the trial judge: "We have (4) counts to vote on. What happens is [*sic*] we aren't unanimous for all? Do we have to be agreed on all? i.e. what if we have a verdict on one, but not all?" With the agreement of the attorney for the Commonwealth and defense counsel, the trial court responded to the jury's question by stating, "You must return four separate verdicts. Any verdict of guilty must be unanimous. You are not required to reach the same verdict on each."

The jury subsequently returned a guilty verdict upon one count of possessing child pornography as a second or subsequent offense, and verdicts of not guilty on the remaining three charges. While reading the jury verdicts aloud, the trial judge noted that "the one verdict they found guilty is a second or subsequent offense, but they didn't find him guilty on the first offense." With the agreement of the parties, the trial judge directed the jury to return to the jury room. The parties then agreed that the trial judge should not tell the jury to change their verdicts. The trial judge then brought the jury back to the courtroom, he thanked them for their service, and he released them. Neither party polled the jury before they were released. The trial judge found Yancey not guilty of three of the charges in accordance with the jury's not guilty verdicts, and he dismissed those charges. He did not enter the jury's guilty verdict on the remaining charge, and he directed the parties to brief the verdict issue for a post-trial hearing.

### E.  Yancey's Motion to Correct a Clerical Error on the Verdict Form

Counsel for Yancey later moved the trial court to "correct the clerical error in the verdict form" by applying Code § 8.01-428 and "striking the 'second or subsequent offense' language." Yancey's counsel attached to her motion an affidavit from the jury foreman in which the jury foreman stated, "Due to a clerical error, we incorrectly entered our guilty verdict on a verdict

form for a second or subsequent offense of child pornography; our intention was to enter the guilty verdict on the verdict form for the first offense of possession of child pornography."

At the post-trial hearing, Yancey's counsel argued that "what we have here is an inadvertent error made by the jury foreman filling out the form." Counsel for Yancey asserted that the jury foreman's affidavit "doesn't impact the verdict and it certainly doesn't allege misconduct on anyone's part. It merely reflects what the verdict they decided was. The way the form was filled out does not properly reflect that verdict." Relying on the Supreme Court's decisions in *McQuinn v. Commonwealth*, 298 Va. 456 (2020), and *Reed v. Commonwealth*, 239 Va. 594 (1990), the trial judge stated that "you don't go poking around in the verdict." The trial judge explained:

> We've got a case where there's ample evidence that this person
> was guilty of a second or subsequent offense because we put six
> photographs in that no person in any reasonable state of mind
> could find anything but pornographic. They were the most
> graphic, blatantly graphic sexual exploitive photos of children that
> anyone could imagine. And so, you know, who knows what they
> did back there.

The trial court subsequently denied Yancey's motion, and it found Yancey guilty of the charge of possession of child pornography, second or subsequent offense — in accordance with the jury's verdict. Yancey now appeals to this Court.

## II. ANALYSIS

### A. Motion *in Limine*

In his first assignment of error, Yancey contends, "The trial court erred in denying Mr. Yancey's motion in limine to prohibit any evidence of, or regarding, any images other than those he has been charged with." Yancey argues that the anime images were not relevant and that Detective Perseghin's testimony about those anime images was unfairly prejudicial. He also

- 9 -

argues that, regarding the photographs of suspected child pornography, "[t]he Commonwealth should have been limited in the number of images it was permitted to introduce into evidence."

This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *Herndon v. Commonwealth*, 280 Va. 138, 143 (2010). In doing so, "we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009) (quoting *Beck v. Commonwealth*, 253 Va. 373, 385 (1997)).

In a criminal case, the Commonwealth must prove every element of the offense. *Kenner v. Commonwealth*, 299 Va. 414, 426 (2021). The Commonwealth has the "prerogative to choose what evidence to offer to the fact-finder to meet its burden of proof," but "the trial court retains its discretion to exclude evidence as repetitious and cumulative." *Boone v. Commonwealth*, 285 Va. 597, 600, 602 (2013). The trial court may also "exclude evidence when, in the court's sound discretion, its prejudicial effect substantially exceeds its probative value." *Id.* at 602.

This Court has articulated that "[e]vidence of other independent acts of an accused is inadmissible if relevant only to show a probability that the accused committed the crime for which he is on trial because he is a person of bad or criminal character." *Castillo v. Commonwealth*, 70 Va. App. 394, 414 (2019) (alteration in original) (quoting *Sutphin v. Commonwealth*, 1 Va. App. 241, 245 (1985)). *See also* Va. R. Evid. 2:404(b). "However, such evidence is admissible when it is 'relevant to an issue or element in the present case.'" *Castillo*, 70 Va. App. at 414 (quoting *Sutphin*, 1 Va. App. at 245). For example, evidence of an accused's prior bad acts may be properly admitted:

> (1) to prove motive to commit the crime charged; (2) to establish guilty knowledge or to negate good faith; (3) to negate the possibility of mistake or accident; (4) to show the conduct and feeling of the accused toward his victim, or to establish their prior relations; (5) to prove opportunity; (6) to prove identity of the accused as the one who committed the crime where the prior

criminal acts are so distinctive as to indicate a *modus operandi*; or (7) to demonstrate a common scheme or plan where the other crime or crimes constitute a part of a general scheme of which the crime charged is a part.

*Id.* at 415 (quoting *Quinones v. Commonwealth*, 35 Va. App. 634, 640 (2001)). As this Court has reiterated:

This list is neither exhaustive nor definitive; intent, general (as opposed to guilty) knowledge, agency, premeditation and other elements of criminal acts are all subsumed within the exceptions to the general rule and may be shown by prior bad act evidence when relevant to prove a material element or issue of the crime charged.

*Id.* (quoting *Lafon v. Commonwealth*, 17 Va. App. 411, 417 (1993)).

Here, Yancey was charged with knowingly possessing child pornography in violation of Code § 18.2-374.1:1. To establish knowing possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the [contraband] and that it was subject to his dominion and control." *Terlecki v. Commonwealth*, 65 Va. App. 13, 24 (2015) (alteration in original) (quoting *Drew v. Commonwealth*, 230 Va. 471, 473 (1986)).

In this case, both the prosecution and the trial court took steps to restrict the prejudicial impact of the anime images. The prosecution offered only Detective Perseghin's testimony regarding his observations about the anime images and their corresponding titles rather than admitting the anime images themselves into evidence. The trial court then limited Detective Perseghin's testimony to his descriptions of a few of the anime images rather than allowing him to describe all of the anime images. The trial court further limited the impact of this evidence by giving two cautionary instructions — Instruction 12A and Instruction 12B — directing the jury to consider the evidence for the limited purpose of establishing whether Yancey "knowingly and intentionally possessed the alleged child pornography photographs," and "whether it tends to

- 11 -

prove motive, intent, knowledge, or the absence of mistake or accident." The record contains no evidence that the jurors did not follow the trial court's instructions. *See Spencer v. Commonwealth*, 240 Va. 78, 95 (1990).

In addition, the prosecution offered only six photographs of suspected child pornography into evidence despite there being 16 such photographs of suspected child pornography on Yancey's electronic devices. As this Court has previously held, "the Commonwealth was not obligated to have faith that the jury would be satisfied with any particular one or more of the items of proof. Therefore, it was entitled to utilize its entire arsenal." *Pittman v. Commonwealth*, 17 Va. App. 33, 35-36 (1993). Consequently, the Commonwealth's photographic evidence of suspected child pornography was not limited to the number of charges.

In short, the trial court did not err in denying Yancey's motion *in limine*. The record supports a finding that the legitimate probative value of the evidence on the element for which it was offered — knowledge — outweighed any potential prejudice. *See Harvey v. Commonwealth*, 76 Va. App. 436, 480 (2023). Considering the record as a whole, we cannot say that the trial court abused its discretion by allowing Detective Perseghin to testify about the anime images, and we cannot say that it abused its discretion by admitting into evidence the six photographs of suspected child pornography.

### B. Jury Instruction

In his second assignment of error, Yancey contends, "The trial court erred in denying Mr. Yancey his jury instruction regarding '[e]vidence of other specific, similar acts.'" (Alteration in original).

The Supreme Court has often stated, "Whether to give or deny jury instructions 'rest[s] in the sound discretion of the trial court.'" *Hilton v. Commonwealth*, 293 Va. 293, 302 (2017) (alteration in original) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)). "When

granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." *Id.* (quoting *Daniels v. Commonwealth*, 275 Va. 460, 466 (2008)).

Here, both Instruction 12A and Instruction 12B given by the trial court to the jury accurately stated the law regarding propensity evidence. Counsel for Yancey agreed to Instruction 12B, and she even proposed Instruction 12A, which the trial court granted after adding the word "solely" to the sentence: "You cannot find Mr. Yancey guilty of possession of child pornography based *solely* on his possession of cartoon images of sexually explicit material involving minors." (Emphasis added). The trial court was not required to accept counsel for Yancey's request to give a third jury instruction on propensity evidence. *See Hilton*, 293 Va. at 302. In short, the trial court left "nothing unsaid which need[ed] to be said, while saying no more than necessary." *Kennemore v. Commonwealth*, 50 Va. App. 703, 712 (2007) (alteration in original). Therefore, we cannot say that the trial court abused its discretion in denying Yancey's proffered jury instruction regarding propensity evidence.

## C. Motion to Correct a Clerical Error

In his third assignment of error, Yancey contends, "The trial court erred in refusing to grant Mr. Yancey's motion to correct clerical error and strike the 'second or subsequent offense' language from the verdict form." He argues, "The trial court also erred in refusing to consider the juror affidavit at the motions hearing." In addition, he likewise argues, "The trial court further erred in convicting Mr. Yancey of, and sentencing accordingly to, a second or subsequent offense."

Code § 8.01-428(B) provides, in relevant part:

> Clerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own

- 13 -

initiative or upon the motion of any party and after such notice, as the court may order.

"Scrivener's or similar errors in the record, which are demonstrably contradicted by all other documents, are clerical mistakes." *Wellmore Coal Corp. v. Harman Mining Corp.*, 264 Va. 279, 283 (2002) (quoting *Zhou v. Zhou*, 38 Va. App. 126, 133 (2002)). Such clerical mistakes "must be apparent from the record." *Hart v. Hart*, 35 Va. App. 221, 230 (2001).

"Virginia has been more careful than most states to protect the inviolability and secrecy of jurors' deliberations" and has "adhered strictly to the general rule that the testimony of jurors should not be received to impeach their verdict, especially on the ground of their own misconduct." *Caterpillar Tractor Co. v. Hulvey*, 233 Va. 77, 82 (1987). The Supreme Court has made clear that jury "'verdicts cannot be upset by speculation or inquiry' into whether they 'may have been the result of compromise, or of a mistake on the part of the jury.'" *McQuinn*, 298 Va. at 459 (quoting *Reed*, 239 Va. at 597).

This Court has stated, "Once the jury has returned its verdict 'in open court,' a defendant has a right to have the jury 'polled individually,' to confirm that each juror joins in the verdict and that it is, in fact, unanimous." *Bethea v. Commonwealth*, 68 Va. App. 487, 506 (2018) (quoting *Humbert v. Commonwealth*, 29 Va. App. 783, 792 (1999)). "The trial court may require each juror to vote yes or no without opportunity for explanation." *Id.* "There is no right to a special poll to inquire how or why each juror arrived at the verdict." *Id.* (quoting *Shepperson v. Commonwealth*, 19 Va. App. 586, 592 (1995)). "However, if a juror expresses confusion during a jury poll, the trial court has 'discretionary authority to ask appropriate neutral questions to clarify' that juror's response." *Id.* at 506 n.11 (quoting *Carver v. Commonwealth*, 17 Va. App. 7, 10 (1993)). These "protections are in place to ensure that a jury verdict represents the understanding and agreement of all of the jurors." *Id.* at 506.

Here, after the jury rendered its verdicts, counsel for Yancey did not even seek to poll the jury before the jury was released. In fact, the parties all agreed that the jury could be released. The Supreme Court has long held "that once a jury is discharged and leaves the presence of the court, it cannot be reassembled to correct a substantive defect in its verdict." *LeMelle v. Commonwealth*, 225 Va. 322, 324 (1983). *See also Quesinberry v. Commonwealth*, 241 Va. 364, 377 (1991) (same). *See generally Melton's Case*, 132 Va. 703, 712 (1922) ("When the court announces their discharge and they leave the presence of the court, their functions as jurors have ended, and neither with nor without the consent of the court can they amend or alter their verdict. The sanctity of jury trial cannot be thus subjected to the hazard of suspicion."); *Porterfield's Case*, 91 Va. 801, 807 (1895).[7]

Furthermore, although a trial court unquestionably has the power under Code § 8.01-430 to set aside a jury's verdict if it is contrary to the evidence or lacks evidence to support it, Yancey's counsel never moved for a mistrial or moved for a new trial. She also never moved to set aside the jury's verdict. Instead, counsel for Yancey merely moved the trial court — *after* the jury had been discharged and had left the court with the agreement of the parties — to correct a purported clerical error on the jury's guilty verdict form. As the Supreme Court has held, "If there is doubt as to the meaning of the jury's verdict the question should have been raised by counsel before the jury was discharged, thus permitting the verdict to be corrected." *Rakes v. Fulcher*, 210 Va. 542, 549 (1970) (quoting *Northern Va. Power Co. v. Bailey*, 194 Va. 464, 473 (1952)). Therefore, given that Yancey's counsel agreed to release the jury without polling them

_____

[7] The Virginia Rules of Evidence allow a juror's testimony or affidavit to be considered for the very limited purpose of determining whether "a mistake was made in entering the verdict on the verdict form." Va. R. Evid. 2:606(b)(ii)(c). The Commonwealth argues that Rule 2:606 does not alter this prior caselaw, and also points out that Yancey did not argue that this rule was relevant in the trial court. Because Yancey did not raise any potential impact of Rule 2:606(b)(ii)(c) before the trial court, or to this Court on appeal, we do not address this Rule of Evidence here.

and given that she did not move for the jury to correct the verdict form before they were discharged, we cannot say that the trial court erred in denying Yancey's motion.

### D. Sufficiency of the Evidence

In his fourth assignment of error, Yancey contends that "[t]he trial court erred in denying Mr. Yancey's motion to strike the charges of possessing child pornography" because "the evidence was insufficient to establish knowing possession of the images" and because "the evidence was insufficient to establish that the images were child pornography."

The Supreme Court has often stated, "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is "plainly wrong or without evidence to support it."'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id*. (alteration and emphasis in original) (quoting *Pijor*, 294 Va. at 512). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (emphasis in original) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

"Any person who knowingly possesses child pornography is guilty of a Class 6 felony." Code § 18.2-374.1:1(A). "Any person who commits a second or subsequent violation of subsection A is guilty of a Class 5 felony." Code § 18.2-374.1:1(B). Code § 18.2-374.1(A) defines "child pornography" as "sexually explicit visual material which utilizes or has as a subject an identifiable minor." To convict a defendant of possession of child pornography, "the Commonwealth must prove beyond a reasonable doubt that the individual 'knowingly possesse[d] sexually explicit visual material utilizing or having as a subject a person less than 18

- 16 -

years.'" *Terlecki*, 65 Va. App. at 20 (alteration in original) (quoting *Kromer v. Commonwealth*, 45 Va. App. 812, 817 (2005)).

This Court has explained that a violation of Code § 18.2-374.1:1(A) "involves the act of possessing child pornography — not the act of acquiring it." *Papol v. Commonwealth*, 63 Va. App. 150, 153 (2014). Consequently, "Code § 18.2-374.1:1(A) tailors the unit of prosecution analysis to 'the number of individual items of sexually explicit visual material' possessed by the defendant." *Id.* (quoting *Chapman v. Commonwealth*, 56 Va. App. 725, 732 (2010)). "The only qualification is that each image possessed must individually fit within the definition of 'child pornography' as defined by Code § 18.2-374.1(A)." *Id.*

Furthermore, this Court has recognized that "[u]nlike other Virginia statutes, Code § 18.2-374.1:1(B) does not use the word 'conviction' as a predicate for the enhanced felony charge." *Id.* at 155. Rather, subsection B "speaks only of a 'second or subsequent violation' of the child-pornography statute." *Id.* This Court has previously explained, "When multiple images are downloaded on a single occasion, one of those images invariably constitutes the first image possessed, while all the others qualify as second or subsequent images possessed." *Id.* at 156. Therefore, a criminal defendant commits the first violation of the statute when he possesses the first offending image, and he commits any subsequent violations of the statute when he possesses each of the other offending images. *Id.* at 155.

1. Yancey Knowingly Possessed Child Pornography

When reviewing the sufficiency of the evidence to support a conviction for possession of child pornography, this Court has repeatedly stated, "In order to convict a person of illegal possession of contraband, proof of actual possession is not required; proof of constructive possession will suffice." *Terlecki*, 65 Va. App. at 23 (quoting *Kromer*, 45 Va. App. at 819). "To support a conviction based upon constructive possession, 'the Commonwealth must point to

- 17 -

evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the [contraband] and that it was subject to his dominion and control.'" *Id.* at 24 (alteration in original) (quoting *Drew*, 230 Va. at 473). "Ownership or occupancy of the premises on which the contraband was found is a circumstance probative of possession." *Id.* (quoting *Kromer*, 45 Va. App. at 819).

Here, Yancey admitted to the investigating officers that he was the owner of the email address that was associated with the original cyber tip concerning the anime images. He willingly showed the investigating officers his electronic devices, and he voluntarily consented to the subsequent forensic analysis of them. He also provided the investigating officers with the usernames and passwords needed to access his devices, and he rated his technical abilities as a 12 on a scale of 1 to 10. At trial, Detective Perseghin testified that he saw an anime image of a child engaged in sexual acts on Yancey's monitor when he first entered Yancey's bedroom. In addition, Detective Perseghin later found additional anime images and photographs of suspected child pornography on Yancey's devices.

Furthermore, Jessica Wright, a forensic examiner, testified at trial that she found 16 photographs of suspected child pornography on Yancey's Seagate external hard drive and his HP laptop. On Yancey's Seagate external hard drive, the photographs that were admitted as Commonwealth's Exhibits 9, 10, 11, and 12 were found in the user-created "WHATSAPP FAP FAP" folder, which was located within the user-created "ShoDrop" folder. Wright determined that the user must have put the digital material on the Seagate external hard drive, which had been connected to Yancey's Gateway laptop at some point. Those same photographs were also found on Yancey's HP laptop under the password protected "The OhFaSho" user account and within the same "WHATSAPP FAP FAP" folder. Wright similarly determined that the photographs must have been put on the HP laptop "by someone either downloading from a

computer or the internet, or from another device." Wright further testified that on Yancey's Gateway laptop, which contained the user-created "The OhFaSho" account, she found the photograph admitted as Commonwealth's Exhibit 8 in unallocated space, which indicated that the photograph had been deleted. Wright noted that LNK files showed that the same "WHATSAPP FAP FAP" folder present on Yancey's Seagate external hard drive and his HP laptop had also been on his Gateway laptop. In addition, a LNK file indicated that Yancey had opened and viewed the photograph that was admitted as Commonwealth's Exhibit 7.

Under the totality of the evidence, the record supports the reasonable inference that Yancey controlled all of the electronic devices that were recovered from his bedroom. The evidence further supports a finding that Yancey moved the photographs across multiple devices. Given Yancey's technical abilities, his ownership of the electronic devices, and the common names of his user-created accounts and his user-created folders, the record supports the jury's implicit findings that Yancey used his devices and that he had knowledge of and control over their contents — including the six photographs admitted into evidence at trial as Commonwealth's Exhibits 7, 8, 9, 10, 11, and 12. *See Kromer*, 45 Va. App. at 821. Therefore, we cannot say that the trial court erred in denying Yancey's motion to strike — or that the jury, as the finder of fact, was plainly wrong or without credible evidence in finding that Yancey knowingly possessed the photographs of child pornography.

2. The Photographs Contained Sexually Explicit Visual Material

Yancey argues that the photographs admitted into evidence do not contain "sexually explicit visual material." Specifically, he argues that the photographs only show that "the genitalia are merely on display, but is not being manipulated in a way."

Contrary to Yancey's argument, a conviction for possession of child pornography does not require that the sexually explicit visual material depict the manipulation of genitalia. "Sexually explicit visual material" is statutorily defined to include:

> a picture, photograph, drawing, sculpture, motion picture film, digital image, including such material stored in a computer's temporary Internet cache when three or more images or streaming videos are present, or similar visual representation which depicts sexual bestiality, a lewd exhibition of nudity, as nudity is defined in § 18.2-390, or sexual excitement, sexual conduct or sadomasochistic abuse, as also defined in § 18.2-390, or a book, magazine or pamphlet which contains such a visual representation.

Code § 18.2-374.1(A). As this Court has previously stated, "'Lewd' is a synonym of 'lascivious' and 'indecent.'" *Asa v. Commonwealth*, 17 Va. App. 714, 718 (1994) (quoting *Dickerson v. City of Richmond*, 2 Va. App. 473, 479 (1986)). "This Court has also 'defined "lascivious" to mean "a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite."'" *Id.* (quoting *Dickerson*, 2 Va. App. at 479).

The photographs in this case clearly depict young girls posing in sexually provocative positions, with the camera's eye focused on the subject's exposed genitalia. *See id.* at 718-19 (emphasizing that "the camera's eye focused on [the subject's] genitalia," which spoke to the photograph's lewdness). Commonwealth's Exhibits 7, 8, 9, 10, and 11 each depict either a partially nude or an entirely nude young girl posing for the camera with her legs spread open, exposing her genitalia. In addition, Commonwealth's Exhibit 12 depicts an entirely nude female toddler kneeling beside an adult male's erect penis and performing oral sex on the adult male. Thus, viewed in the totality, we indeed cannot say that the trial court erred in denying Yancey's motion to strike — or that the jury, as the finder of fact, was plainly wrong or without credible evidence in finding that the photographs in Commonwealth's Exhibits 7, 8, 9, 10, 11, and 12 depict sexually explicit visual material.

3.  The Photographs Depicted Identifiable Minors

Yancey argues that the photograph admitted as Commonwealth's Exhibit 7 "does not plainly depict a child" because "the person in that particular photograph had pubic hair, developed breasts, and it does not readily appear from her face that she is underage."

The term "an identifiable minor" is statutorily defined as:

> a person who was a minor at the time the visual depiction was created, adapted, or modified; or whose image as a minor was used in creating, adapting or modifying the visual depiction; and who is recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature; and shall not be construed to require proof of the actual identity of the identifiable minor.

Code § 18.2-374.1(A). This Court has stated that when photographs of suspected child pornography "are admitted at trial, it is generally recognized 'that pornographic images themselves are sufficient to prove the depiction of actual minors.'" *Terlecki*, 65 Va. App. at 21 (quoting *United States v. Bynum*, 604 F.3d 161, 166 (4th Cir.), *cert. denied*, 560 U.S. 977 (2010)). Indeed, "laypersons can make judgments regarding whether the subjects depicted in images are actual people or computer generated simply by viewing the images." *Id.* at 21-22. Thus, "a trier of fact is competent to determine whether pornographic images depict actual people simply by looking at the images themselves." *Id.* at 21 (describing and citing to federal circuit court cases in which actual images of child pornography were admitted into evidence and served as the basis for the convictions).

Yancey concedes on brief to this Court that the other photographs that the Commonwealth admitted into evidence (in Exhibits 8, 9, 10, 11, and 12) "have some other indication that the subject is a minor — be it readily apparent that the person is a toddler, or other indication such as stuffed animals on a bed." We agree. In addition, although the young female depicted in Commonwealth's Exhibit 7 does exhibit some visual signs of post-pubescence such

- 21 -

as pubic hair and partially developed breasts, her appearance provides no indication that she has reached the age of majority (i.e., 18 years of age). Simply put, the jury was certainly competent to determine if the photographs found on Yancey's electronic devices depicted minors. Therefore, we cannot say that the trial court erred in denying Yancey's motion to strike — or that the jury, as the finder of fact, was plainly wrong or without credible evidence in finding that the photographs depicted "an identifiable minor" as their subject. Consequently, because Yancey knowingly possessed multiple sexually explicit photographs of identifiable minors, we certainly cannot say that no rational factfinder could have found the evidence sufficient to convict him in this case of possession of child pornography, second or subsequent offense.

## III. CONCLUSION

For all of the foregoing reasons, we affirm the trial court's judgment, and we uphold Yancey's conviction.

*Affirmed.*